[No. B040211. Second Dist., Div. Three. Nov. 16, 1989.]

CITRUS STATE BANK, Plaintiff and Appellant, v.
WILLIAM J. McKENDRICK , Defendant and Respondent.

**COUNSEL**

McAlpin, Doonan & Seese and Daniel J. Doonan for Plaintiff and Appellant.

Patrick L. Barnes for Defendant and Respondent.

OPINION

CROSKEY, J.—This case raises the novel question of whether the three-month period of limitation, set out in Code of Civil Procedure section 580a,[1] applies to bar an action for a deficiency judgment brought beyond that period by a junior trust deed holder who has purchased the secured property at a foreclosure sale of a more senior trust deed. We hold that it does.

Plaintiff Citrus State Bank (Bank) appeals from a judgment following a nonsuit on its complaint to recover such a deficiency judgment against the defendant William J. McKendrick (McKendrick). Because we conclude that the Bank, as a junior lienholder who purchased the secured real property at a senior foreclosure, (1) is bound by section 580a and (2) failed to bring its action within the required three-month period, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 29, 1983, the Bank made a loan to McKendrick in the sum of $38,445. Repayment of the loan was secured by a deed of trust executed by McKendrick on a parcel of residential real property located in Temple City, California. This deed of trust was subordinate to four senior trust deeds, three judgment liens and one Employment Development Department lien in favor of the State of California. The total of these senior encumbrances was approximately $154,000.

On February 28, 1984, the holder of the third trust deed recorded a notice of default under her deed of trust and a trustee's (nonjudicial) foreclosure sale was set for June 20, 1984. On that date, the Bank, in order to protect its own subordinate claim, was the successful bidder at the sale. At that time the total combined debts against the property were $192,386.38 (including the amount owed to the Bank of $38,445, plus interest at 13.5 percent for a total of $41,369.98.) The Bank purchased the property for the total sum of $45,132 and received a trustee's deed which was dated June 20, 1984, and ultimately recorded on December 7, 1984.[2] The property was later resold by the Bank on May 29, 1985, for $146,500. The Bank claims

---

[1] Unless otherwise indicated, all code references are to the Code of Civil Procedure.

[2] Although it is not entirely clear from the record, it appears that the Bank bid enough to pay off the encumbrance of the foreclosing third trust deed holder, plus interest, costs and trustee fees, and simply took title to the secured property subject to all remaining senior encumbrances. Of course, such foreclosure sale cut off the security interests of all lienholders junior to the foreclosed third trust deed.

that this was an open market sale and the price received represented the then fair market value of the property.[3]

On August 8, 1985, over 14 months after the date of the foreclosure sale, the Bank filed this action against McKendrick seeking a deficiency judgment for the full amount of the unpaid note, plus interest. The case went to trial on November 15, 1988, and McKendrick made a motion for a nonsuit on the ground that the action had not been filed in a timely manner. McKendrick argued that the Bank was seeking a deficiency judgment after a nonjudicial foreclosure sale and was therefore required, under the provisions of section 580a, to file the action within three months of the date of the sale. The trial court agreed and granted the motion. The Bank's subsequent motion for reconsideration was denied. After entry of a judgment based on the nonsuit order, the Bank filed a timely appeal.

## CONTENTIONS OF THE PARTIES

■ As already noted, the central issue presented here is whether the three-month limitation period in section 580a applies to a junior trust deed holder who purchases the secured property at the foreclosure of a more senior trust deed.[4] Obviously, if it does then the trial court's ruling was correct. However, the Bank argues that it should be treated no differently than a sold-out junior who does *not* purchase the property and that therefore the applicable limitations period should be four years, as provided in section 337. McKendrick, on the other hand, contends that the fact that the Bank *was* the purchaser makes a critical difference and that all of the provisions of section 580a, including the three-month limitations period, are applicable and the Bank's action was therefore untimely.

## DISCUSSION

■ "In the absence of a statute to the contrary, a creditor secured by a trust deed or mortgage on real property may recover the full amount of the debt upon default. He may realize the security or sue on the obligation or both; the obligation is an independent undertaking by the debtor to pay. [Citation.] In most states now, however, the creditor's right to enforce such a debt is restricted by statute. Thus, in California the creditor must rely upon his security before enforcing the debt. (Code Civ. Proc., §§ 580a,

---

[3] However, we note that the record reflects that the Bank's own appraisal of the property in July of 1983 (made when it approved McKendrick's loan application) reflected a valuation of $167,000.

[4] As we explain below, it clearly does not apply to a *nonpurchasing* junior trust deed holder. Such a "sold-out" junior is not bound by the limitations of section 580a and may sue for the full amount of the unpaid obligation without regard to those limitations.

725a, 726.) If the security is insufficient, his right to a judgment against the debtor for the deficiency may be limited or barred by sections 580a, 580b, 580d, or 726 of the Code of Civil Procedure.

"Under sections 580a and 726, proceedings for a deficiency must be initiated within three months after either a private sale under a power of sale or a judicial sale, and the recovery may not exceed the difference between the amount of the indebtedness and the fair market value of the property at the time of the sale." (*Roseleaf Corp.* v. *Chierighino* (1963) 59 Cal.2d 35, 38-39 [27 Cal.Rptr. 873, 378 P.2d 97], fn. omitted.)

Section 580a[5] was enacted in 1933 and provides that the amount of a deficiency judgment after a non-judicial foreclosure sale of secured real property shall be "the lesser of 1) the excess of the indebtedness over the fair market value of the property or 2) the excess of the indebtedness over the sale price. Enacted at a time when the Depression had depleted cash and credit [citation], the statute was 'designed to prevent creditors from buying in at their own sales at deflated prices and realizing double recoveries by holding debtors for large deficiencies." (*Walter E. Heller Western, Inc.* v. *Bloxham* (1985) 176 Cal.App.3d 266, 270-271 [221 Cal.Rptr. 425], quoting

---

[5] Section 580a, as it read at times relevant to this matter, provided: "Whenever a money judgment is sought for the balance due upon an obligation for the payment of which a deed of trust or mortgage with power of sale upon real property or any interest therein was given as security, following the exercise of the power of sale in such deed of trust or mortgage, the plaintiff shall set forth in his complaint the entire amount of the indebtedness which was secured by said deed of trust or mortgage at the time of sale, the amount for which such real property or interest therein was sold and the fair market value thereof at the date of sale and the date of such sale. Upon the application of either party made at least 10 days before the time of trial the court shall, and upon its own motion the court at any time may, appoint one of the probate tax referees provided for by law to appraise the property or the interest therein sold as of the time of sale. Such referee shall file his appraisal with the clerk and the same shall be admissible in evidence. Such referee shall take and subscribe an oath to be attached to the appraisal that he has truly, honestly and impartially appraised the property to the best of his knowledge and ability. Any referee so appointed may be called and examined as a witness by any party or by the court itself. The court must fix the compensation of such referee in an amount as determined by the court to be reasonable, but such fees shall not exceed similar fees for similar services in the community where such services are rendered, which may be taxed and allowed in like manner as other costs. Before rendering any judgment the court shall find the fair market value of the real property, or interest therein sold, at the time of sale. The court may render judgment for not more than the amount by which the entire amount of the indebtedness due at the time of sale exceeded the fair market value of the real property or interest therein sold at the time of sale with interest thereon from the date of the sale; provided, however, that in no event shall the amount of said judgment, exclusive of interest after the date of sale, exceed the difference between the amount for which the property was sold and the entire amount of the indebtedness secured by said deed of trust or mortgage. *Any such action must be brought within three months of the time of sale under such deed of trust or mortgage.* No judgment shall be rendered in any such action until the real property or interest therein has first been sold pursuant to the terms of such deed of trust or mortgage, unless such real property or interest therein has become valueless." (Italics added.)

from *Roseleaf Corp.* v. *Chierighino, supra,* 59 Cal.2d 35, 40.) The section also provided, at the time of the subject foreclosure, that "Any such action must be brought within three months of the time of sale under such deed of trust or mortgage."[6]

While this section, as well as related antideficiency provisions, is fairly easy to apply in the context of a single lienholder, difficulties arise when there are multiple encumbrances and a foreclosure sale by one leaves others with their previously secured obligations unpaid. For example, what are the rights of a junior trust deed holder whose interest is foreclosed, along with the debtor's, by the nonjudicial sale of the secured property under a more senior lien?

This issue was addressed by the Supreme Court in *Roseleaf Corp.* v. *Chierighino, supra,* 59 Cal.2d 35, where it was held that the limitations of section 580a did not extend to "sold out" junior lienholders. The court explained that, "The position of a junior lienor whose security is lost through a senior sale is different from that of a selling senior lienor. A selling senior can make certain that the security brings an amount equal to his claim against the debtor or the fair market value, whichever is less, simply by bidding in for that amount. He need not invest any additional funds. The junior lienor, however, is in no better position to protect himself than is the debtor. Either would have to invest additional funds to redeem or buy in at the sale. Equitable considerations favor placing this burden on the debtor, not only because it is his default that provokes the senior sale, but also because he has the benefit of his bargain with the junior lienor who, unlike the selling senior, might otherwise end up with nothing." (*Id.,* at p. 41.)

■ Thus, a sold-out junior lienholder whose interest is lost by virtue of a senior foreclosure is free to sue directly on his unpaid (and now unsecured) note and is not encumbered by the provisions of section 580a. That is, the amount of the deficiency is not limited, there is no need to obtain a fair market appraisal of the secured property and it is not necessary that the action be commenced within three months of the foreclosure sale. The applicable limitations period is four years as provided in section 337.[7] How-

---

[6]Effective July 1, 1989, this penultimate sentence in section 580a was changed to read: "Any such action must be brought within three months of the time of sale under the deed of trust or mortgage." (New language underlined.)

[7]Section 337 provides for a four-year limitations for "An action upon any contract, obligation or liability founded upon an instrument in writing, except as provided in Section 336a of this code; provided, that the time within which any action for a money judgment for the balance due upon an obligation for the payment of which a deed of trust or mortgage with power of sale upon real property or any interest therein was given as security, following the exercise

ever, this rule does not apply where the junior lienholder is the purchaser of the secured property at the senior foreclosure.

The first California case involving a purchasing junior lienholder was *Walter E. Heller Western, Inc.* v. *Bloxham, supra,* 176 Cal.App.3d 266. Although the case involved the "fair value" provisions of section 580a, it is directly applicable here. The plaintiff, Heller, was the holder of a subordinated deed of trust and purchased the secured property at the senior's nonjudicial foreclosure sale. Following the sale, Heller filed an action on its note which had been wiped out by the foreclosure sale and sought a deficiency for the full amount due. The foreclosure sale did not result in any significant money to be applied to the subordinated note. In fact, Heller's bid was only $2 over the amount of the senior lien. As that case clearly illustrates, there is a real distinction between a junior lienor who purchases the secured property at a senior sale and a junior who is "sold-out".

This is a distinction that was not presented in *Roseleaf.* "The junior in *Roseleaf* did not purchase at the senior's sale. To apply the fair value limitations to that junior would result in the amount of his deficiency being limited by the amount of someone else's bid, a factor over which he has no control. However, once a junior chooses to purchase, it is equitable to apply the fair value limitations to him. Any loss to him as creditor by his own underbidding is gained by him as purchaser for a bargain price. [Citation.] 'To so limit the deficiency judgment right is consistent with the general purpose of section 580a, *viz.,* to protect against a lienor buying in the property at a deflated price, obtaining a deficiency judgment, and achieving a recovery in excess of the debt by reselling the property at a profit. . . . [¶] . . . . The unmistakable policy of California is to prevent excess recoveries by secured creditors.' *Bank of Hemet* v. *United States* [(9th Cir. 1981)] 643 F.2d [661], 669." (*Walter E. Heller Western, Inc.* v. *Bloxham, supra,* 176 Cal.App.3d at pp. 273-274; see also, *Bank of Hemet* v. *United States* (9th Cir. 1981) 643 F.2d 661.)

The Bank's argument to this court relies heavily upon the decision in *Roseleaf* and an earlier California case[8] which also declined to apply section 580a to a junior lienor's efforts to secure a deficiency judgment. Both cases, however, are distinguishable as neither involved a *purchasing* junior lienholder.

Nonetheless, the Bank takes the view that the rule of *Roseleaf* should apply irrespective of whether the junior was a purchaser or was simply

---

of the power of sale in such deed of trust or mortgage, may be brought shall not extend beyond three months after the time of sale under such deed of trust or mortgage."

[8] *Hillen* v. *Soule* (1935) 7 Cal.App.2d 45 [45 P.2d 349], disapproved on another point in *Brown* v. *Jensen* (1953) 41 Cal.2d 193, 198-199 [259 P.2d 425].

"sold out." It somewhat cavalierly dismisses *Heller* as bad law and *Bank of Hemet* v. *United States, supra,* 643 F.2d 661, as a federal case entitled to little weight.

The Bank emphasizes that neither case involved or discussed the question of the three-month limitations period[9] and argues that they stand only for the proposition that the "fair value" provisions of section 580a apply to a purchasing junior. The Bank urges that neither case can be read to require that the three-month limitations period also be applied. The Bank claims that unless the four-year period in section 337 is the applicable period of limitations the Bank will be deprived of substantial rights because, until a resale of the property takes place (a process which here took over a year), the amount of the deficiency can not be determined. Finally, the bank argues that the references in both sections 580a and 337 to an action brought within three months after a "sale under *such* deed of trust" (italics added) means that the limitation is imposed only on the holder of the deed of trust under which the foreclosure sale is being conducted.

We reject all of these arguments. *Heller* and *Bank of Hemet* are well reasoned decisions and reached results that are both fair and consistent with California's strong public policy to prevent excessive recoveries by secured creditors. ■ Like the court in *Heller,* we conclude that a junior lien-holder who purchases the secured property at a senior foreclosure sale is bound by section 580a. It provides the *exclusive* remedy if such junior

---

[9] However, the court in *Bank of Hemet* did note that the plaintiff bank, a purchasing junior lienholder, had failed to file a deficiency action on its unpaid indebtedness within the required three months, thereby losing the right to seek a deficiency judgment against its debtor. The court nonetheless determined to apply the fair value provisions of section 580a even though an action for a deficiency judgment was no longer available to the bank. As the ultimate question in the case involved the amount of the redemption price to be paid by the United States, under 28 United States Code section 2410(d) (in order to protect its tax lien which was junior to the bank's encumbrance), the court had to decide how much of the bank's debt had been satisfied by reason of the bank's purchase at the senior foreclosure.

The court held the fact that the bank had purchased the secured property was dispositive and required the application of section 580a. The court concluded, "We reject treating the entire debt of the Bank as an obligation 'satisfied by reason of such sale.' To the extent, if any, the Bank's debt was eliminated by its failure to seek a deficiency judgment pursuant to section 580a it is not possible to say that that portion was 'satisfied by reason of such sale.' Its destruction came about because of events subsequent to the sale. Thus, we conclude that, by reason of the application of section 580a to the Bank's purchase at the foreclosure sale of the first lienholder's security interest, the amount of the Bank's debt 'satisfied by reason of such sale' is the amount by which the fair market value of the property at the time of the sale exceeded the amount paid by the Bank for the property at the time of the sale. This is the '(A) portion' of the section 2410(d) redemption price while the amount paid by the Bank for the property of the sale is the '(B) portion.' " (*Bank of Hemet* v. *United States, supra,* 643 F.2d at p. 670.)

desires to recover a deficiency judgment following a nonjudicial foreclosure.[10]

In addition, we see no reason to apply only a portion of section 580a. As noted, both *Heller* and *Bank of Hemet* involved the application of that section's "fair value" limitations. No issue was raised in either case as to the three-month limitations period provided for in the penultimate sentence of the section. However, the language of section 580a could not be clearer. It states that any action for a deficiency judgment "must be brought within three months" of the foreclosure sale. Given the mandate of section 580a, an action brought more than three months after the sale, as is the case here, is subject to dismissal as untimely.

Nor does this result in any injustice to the purchasing junior. There is no need for him to await a subsequent resale on the open market. The "fair value" provisions of section 580a provide for a specific process of evaluation which is to take place *after* the complaint is filed and is an integral part of formal pretrial preparation. It is that valuation, rather than any actual subsequent sale, which will control the calculation of the claimed deficiency. Even if an open market sale were to occur prior to trial it would only be persuasive, not controlling, on such "fair value" determination.

Finally, we reject the Bank's contention that section 580a is limited by its terms to the foreclosing senior. In the context of a purchasing junior, there is no reason to make the distinction urged by the Bank.[11] A junior lienholder effectively steps into the shoes of the senior when he purchases the secured property at the senior's foreclosure. Unlike the sold-out junior the security for the payment of his debt has not been rendered valueless, but rather he is protected by the difference between the fair value of the property and the

---

[10] Section 580d notwithstanding, a deficiency judgment is permitted in these circumstances. As the court held in *Walter E. Heller Western, Inc.* v. *Bloxham, supra,* 176 Cal.App.3d at page 273, section 580d (which prohibits a deficiency judgment following a *nonjudicial* foreclosure) will *not* be applied to bar a deficiency judgment to a junior lienor purchasing at a senior's sale. "[T]he purpose of [section 580d] is to create a parity of remedies available to the foreclosing beneficiary: judicial sale with the right to a deficiency judgment accompanied by the debtor's right of redemption, or private sale resulting in nonredeemable title with no right to a deficiency. [Citation.] Although the purchasing junior ends up with nonredeemable title, he is not the one who elected the private sale and had no opportunity to evaluate the desirability of that remedy in light of his situation. It would be unfair to eliminate the purchasing junior's right to a deficiency based on a choice made by the senior lienholder." (*Id.,* at p. 273.)

[11] Indeed, section 580a, prior to its recent amendment, used the phrase "*such* deed of trust" not only in connection with the three-month limitations period, but also with respect to the "fair value" provisions which the Bank concedes apply to limit its deficiency claim. The Bank offers no explanation as to why we should conclude that such language restricts application of the three months limitation period to the foreclosing senior, but at the same time permits the fair value limitation to be applied to both the senior *and* the purchasing junior.

amount of the foreclosure sale price. Upon completion of the senior foreclosure sale he acquires an unredeemable title which he is free to resell.[12] To the extent that the fair market value exceeds the amount of the senior liens which were not discharged by the foreclosure sale, the indebtedness due the junior has been satisfied and failure to apply section 580a could result in a double recovery.

We therefore conclude that the trial court was correct in granting a nonsuit. The Bank's delay for over 14 months went well beyond the time mandated by section 580a.

### DISPOSITION

The judgment is affirmed. McKendrick shall recover his costs on appeal.

Klein, P. J., and Arabian, J., concurred.

---

[12] It is this economic advantage which clearly justifies the legislative choice to limit the period in which a deficiency action may be commenced. To permit the same four-year period to a purchasing junior as is allowed a "sold-out" junior would indeed create an anomalous inequity.