[No. A053038. First Dist., Div. Two. Mar. 3, 1992.]

GEORGE V. SIMON et al., Petitioners, v.
THE SUPERIOR COURT OF CONTRA COSTA COUNTY, Respondent;
BANK OF AMERICA, NT & SA, Real Party in Interest.

## COUNSEL

Boornazian, Jensen & Garthe, Andrew R. Adler and A. Charles Dell'Ario for Petitioners.

No appearance for Respondent.

Lillick & Charles, James S. Monroe and Anne C. Slater for Real Party in Interest.

## OPINION

**PETERSON, J.**—Petitioners, George V. Simon, M.D., and his former wife Bonnie (Simon) Johnson (individually Simon and Johnson, respectively; collectively the Simons), seek a writ of mandate to nullify the order of the trial court denying their motion for summary adjudication of issues, and overruling their demurrer to the first and second causes of action of the first amended complaint of real party in interest, Bank of America, NT & SA (Bank).

In granting the writ, we hold that, where a creditor makes two successive loans secured by separate deeds of trust on the same real property and forecloses under its senior deed of trust's power of sale, thereby eliminating the security for its junior deed of trust, section 580d of the Code of Civil Procedure[1] bars recovery of any "deficiency" balance due on the obligation the junior deed of trust secured.

## I. FACTS AND PROCEDURAL BACKGROUND

In August 1986, Bank lent the Simons a total sum of $1,575,000, for which the latter gave Bank two separate promissory notes—the first in the amount of $1.2 million (senior note); the second for $375,000 (junior note). Each note was secured by a separate deed of trust naming Bank beneficiary and describing the same real property (Simon residence). The senior note was dated August 18, 1986; the deed of trust securing it (senior lien) was recorded August 28, 1986. The junior note was dated August 22, 1986; the deed of trust securing it (junior lien) was recorded August 28, 1986, subsequent to recordation of the senior lien. ■ Neither deed of trust contained a " 'dragnet' " clause, i.e., a clause which "has the effect of making the security instrument security for the debtor's past, present and future obligations to a particular creditor." (*Union Bank* v. *Wendland* (1976) 54 Cal.App.3d 393, 398 [126 Cal.Rptr. 549].)

In August 1988, the Simons had defaulted on the senior note. Bank effected a nonjudicial foreclosure under the power of sale conferred by the senior lien. At the trustee's sale in those proceedings, Bank purchased the Simon residence for a credit bid of $1,050,000, later selling the property to a third party for $1,025,000.[2]

In January 1990, Bank commenced the underlying action seeking recovery from the Simons of $319,591 claimed due on the junior note, together with accrued penalties, interest, and attorney fees; the junior lien having been exhausted by Bank's nonjudicial foreclosure of its senior lien.

After the Simons' answer raised multiple affirmative defenses, including various provisions of the antideficiency statutes of the Code of Civil Procedure, Bank filed a first amended complaint in four causes of action: (1) a claim of money on a written instrument, (2) a deficiency judgment, (3) fraud, and (4) negligent misrepresentation in the inducement of the loan. We

---

[1]Unless otherwise indicated, all subsequent statutory references are to the Code of Civil Procedure.

[2]Although the property was appraised for about $1.7 million during this period, Bank denies this figure was an accurate opinion of the fair market value.

are concerned here with only the first two causes of action, which seek recovery of the obligation represented by the junior note.

Simon demurred to the first and second causes of action on the grounds they were barred by the three-month limitation period of section 580a. Johnson moved for summary adjudication of those causes of action on the same ground. They joined in each other's request for relief.

On April 25, 1991, respondent superior court overruled the demurrer and denied the motion for summary adjudication stating, "Code of Civil Procedure Section 580a is inapplicable to the first and second causes of action . . . [which] are not barred by the limitations period of said section." This petition followed.

The parties and the trial court addressed themselves to the issue of whether Bank was barred from pursuing its causes of action for the deficiency due on the junior note, because it failed to file its complaint within three months of the August 1988 trustee's sale under its senior lien; i.e., did Bank by foreclosure of its senior lien become, for purposes of this action, a "sold-out junior lienor" to which the three-month limitation period of section 580a for filing deficiency actions following foreclosure is inapplicable under the holding of *Roseleaf Corp.* v. *Chierighino* (1963) 59 Cal.2d 35 [27 Cal.Rptr. 873, 378 P.2d 97].

We requested and received briefing and argument from the parties on a broader question of law this case presents implicating section 580d.[3] (*Union Bank* v. *Wendland, supra,* 54 Cal.App.3d 393.) May a creditor, making two successive loans to a debtor on the security of the same real property, obtain title thereto by nonjudicial foreclosure under the power of sale of a senior lien and, having thus eliminated the security for its junior lien, recover *any* deficiency due on the obligation the junior lien secured? If section 580d bars such deficiency actions, consideration of the application of the section 580a three-month limitation period in which to file them is moot.

---

[3]Originally, the applicability of section 580d was not before us since the trial court proceedings focused on section 580a. However, at our request, the parties briefed and argued this issue. "The question is one of law, and the failure to consider it now would serve no purpose other than to exacerbate the burdens of the litigation." (*Sokol* v. *Public Utilities Commission* (1966) 65 Cal.2d 247, 256-257 [53 Cal.Rptr. 673, 418 P.2d 265]; accord, *Ward* v. *Taggart* (1959) 51 Cal.2d 736, 742 [336 P.2d 534].) At oral argument, Bank's counsel conceded that the issue of the applicability of section 580d to the instant case is properly before this court.

## II. DISCUSSION

### A. *Writ Relief*

Section 1086 provides that a writ of mandate "must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law." (See also, *Running Fence Corp.* v. *Superior Court* (1975) 51 Cal.App.3d 400, 408 [124 Cal.Rptr. 339].) ■ In interpreting section 1086, the courts have held: "[T]he intervention of an appellate court may be required to consider instances of a grave nature or of significant legal impact, or *to review questions of first impression and general importance to the bench and bar where general guidelines can be laid down for future cases.* In such cases, the statutory requirement of inadequacy of appellate remedy may have been relaxed in favor of *immediate review of a question of statewide importance so that lower decisions in other cases will be uniform* [citations]. Indeed, where 'the issues presented are of great public importance and must be resolved promptly' [citations], the existence of an alternative appellate remedy will not preclude the original jurisdiction conferred by the California Constitution [citations]." (*Hogya* v. *Superior Court* (1977) 75 Cal.App.3d 122, 129-130 [142 Cal.Rptr. 325], italics added, fns. omitted.)

Because the facts of this case present an important issue of apparent first impression involving application of the antideficiency statutes of this state, we conclude that mandate is an appropriate remedy.

Independently of the foregoing, review by writ of the court's denial of petitioners' motion for summary adjudication of issues is expressly authorized by statute. (See § 437c, subd. (*l*).)

### B. *Background of the Antideficiency Statutes*

The antideficiency statutes were spawned by the depression of the 1930's. "Prior to 1933, a mortgagee of real property was required to exhaust his security before enforcing the debt or otherwise to waive all right to his security (§ 726; see *Walker* v. *Community Bank* (1974) 10 Cal.3d 729, 733-734). However, having resorted to the security, whether by judicial sale or private nonjudicial sale, the mortgagee could obtain a deficiency judgment against the mortgagor for the difference between the amount of the indebtedness and the amount realized from the sale. As a consequence during the great depression with its dearth of money and declining property values, a mortgagee was able to purchase the subject real property at the foreclosure sale at a depressed price far below its normal fair market value and thereafter to obtain a double recovery by holding the debtor for a large

deficiency. (*Roseleaf Corp.* v. *Chierighino* (1963) 59 Cal.2d 35, 40; see Glenn, Mortgages (1943) § 156, pp. 857-861.) In order to counteract this situation, California in 1933 enacted fair market value limitations applicable to both judicial foreclosure sales (§ 726) and private foreclosure sales (§ 580a) which limited the mortgagee's deficiency judgment after exhaustion of the security to the difference between the fair value of the property at the time of the sale (irrespective of the amount actually realized at the sale) and the outstanding debt for which the property was security. . . . (See Hetland, Secured Real Estate Transactions (Cont. Ed. Bar 1974) § 9.3, pp. 183-184.)" (*Cornelison* v. *Kornbluth* (1975) 15 Cal.3d 590, 600-601 [125 Cal.Rptr. 557, 542 P.2d 981], fns. and parallel citations omitted.)

In 1933, the Legislature further constricted recovery of deficiencies by creditors by enacting section 580b barring, inter alia, *any* deficiency judgments after foreclosure of a purchase money mortgage on real property occupied entirely or in part by the purchaser.[4]

"Although both judicial foreclosure sales and private nonjudicial foreclosure sales [i.e., on exercise of the power of sale in a deed of trust] provided for identical deficiency judgments in nonpurchase money situations subsequent to the 1933 enactment of the fair value limitations, one significant difference remained, namely property sold through judicial foreclosure was subject to the statutory right of redemption (§ 725a), while property sold by private foreclosure sale was not redeemable. By virtue of sections 725a and 701, the judgment debtor, his successor in interest or a junior lienor could redeem the property at any time during one year after the sale, frequently by tendering the sale price. The effect of this right of redemption was to remove any incentive on the part of the mortgagee to enter a low bid at the sale (since the property could be redeemed for that amount) and to encourage the making of a bid approximating the fair market value of the security. However, since real property purchased at a private foreclosure sale was not subject to redemption, the mortgagee by electing this remedy, could gain irredeemable title to the property by a bid substantially below the fair value and still collect a deficiency judgment for the difference between the fair value of the security and the outstanding indebtedness.

---

[4]"Section 580b places the risk of inadequate security on the purchase money mortgagee. A vendor is thus discouraged from overvaluing the security. Precarious land promotion schemes are discouraged, for the security value of the land gives purchasers a clue as to its true market value. [Citation.] If inadequacy of the security results, not from overvaluing, but from a decline in property values during a general or local depression, section 580b prevents the aggravation of the downturn that would result if defaulting purchasers were burdened with large personal liability. Section 580b thus serves as a stabilizing factor in land sales." (*Roseleaf Corp.* v. *Chierighino, supra,* 59 Cal.2d at p. 42; see also *Spangler* v. *Memel* (1972) 7 Cal.3d 603, 612 [102 Cal.Rptr. 807, 498 P.2d 1055]; *Bargioni* v. *Hill* (1963) 59 Cal.2d 121, 123 [28 Cal.Rptr. 321, 378 P.2d 593].)

"In 1940 the Legislature placed the two remedies, judicial foreclosure sale and private nonjudicial foreclosure sale on a parity by enacting section 580d . . . . Section 580d bars 'any deficiency judgment' following a private foreclosure sale. 'It seems clear . . . that section 580d was enacted to put judicial enforcement on a parity with private enforcement. This result could be accomplished by giving the debtor a right to redeem after a sale under the power. The right to redeem, like proscription of a deficiency judgment, has the effect of making the security satisfy a realistic share of the debt. [Citation.] *By choosing instead to bar a deficiency judgment after private sale, the Legislature achieved its purpose without denying the creditor his election of remedies. If the creditor wishes a deficiency judgment, his sale is subject to statutory redemption rights. If he wishes a sale resulting in nonredeemable title, he must forego the right to a deficiency judgment. In either case the debtor is protected.*' (*Roseleaf Corp.* v. *Chierighino, supra,* 59 Cal.2d 35, 43-44.)" (*Cornelison* v. *Kornbluth, supra,* 15 Cal.3d at p. 602, italics added.)

Thus, section 580a, enacted before section 580d, limits the amount of a deficiency judgment after the real property security has been sold at a nonjudicial sale to the lesser of either the excess of the indebtedness over the fair market value of the property or the excess of the indebtedness over the sale price.[5] The section also provided, at the time of the subject foreclosure, that any action to recover a deficiency "must be brought within three months of the time of sale under such deed of trust or mortgage." (Stats. 1982, ch. 1535, § 1, p. 5966.)

### C. Bank Is Not a "[S]old-out [J]unior [L]ienor"

As one commentator has observed: "The importance of C.C.P. 580a was greatly diminished with the passage of C.C.P. 580d . . . , prohibiting a deficiency judgment following a nonjudicial sale, but it is still applied when a junior lienor *purchases* at the sale. (See *Walter E. Heller Western* v.

---

[5]Section 580a, as effective during the pendency of this action, provided in pertinent part: "Whenever a money judgment is sought for the balance due upon an obligation for the payment of which a deed of trust or mortgage with power of sale upon real property or any interest therein was given as security, following the exercise of the power of sale in such deed of trust or mortgage, the plaintiff shall set forth in his complaint the entire amount of the indebtedness which was secured by said deed of trust or mortgage at the time of sale, the amount for which the real property or interest therein was sold and the fair market value thereof at the date of sale and the date of such sale. . . . The court may render judgment for not more than the amount by which the entire amount of the indebtedness due at the time of sale exceeded the fair market value of the real property or interest therein sold at the time of sale with interest thereon from the date of the sale; provided, however, that in no event shall the amount of said judgment, exclusive of interest after the date of sale, exceed the difference between the amount for which the property was sold and the entire amount of the indebtedness secured by said deed of trust or mortgage." (Stats. 1982, ch. 1535, § 1, pp. 5965-5966.)

*Blox[ham]* (1985) 176 Cal.App.3d 266, 272 . . . .)"[6] (3 Witkin, Summary of Cal. Law (9th ed. 1987) Security Transactions in Real Property, § 157, p. 657, italics added.) "The effect [of the enactment of section 580d] is that the beneficiary of a deed of trust executed after 1939 cannot hold the debtor for a deficiency unless he uses the remedy of judicial foreclosure . . . with its accompanying right of redemption . . . ." (3 Witkin, *op. cit. supra,* § 175, p. 677.)

Here, the trial court considered the question of whether the creditor-bank holding both senior and junior liens on the same real property, which purchases that property at the senior lien nonjudicial foreclosure sale, must file its action to collect the obligation secured by the junior lien within three months of that sale, pursuant to section 580a. He impliedly found, in his rulings on demurrer and summary issue adjudication, that under these circumstances Bank was a "sold-out junior lienor" (*Roseleaf Corp.* v. *Chierighino, supra,* 59 Cal.2d at p. 39) as to which the three-month limitation period of section 580a was inapplicable; i.e., although Bank's deficiency causes of action were filed in January 1990, more than three months after its senior lien foreclosure sale in August 1988, section 580a was no bar to those causes of action because Bank was a sold-out junior lienor to whom section 580a and its limitation period were inapplicable under *Roseleaf. Roseleaf* held that "The purpose of the fair-value limitations in sections 580a and 726 does not extend to sold-out junior lienors." (*id.* at p. 40.) ■ Bank contends that, since it foreclosed on its first but not its second deed of trust, section 580a and the *three-month limitation period it contains* do not apply here because it is such a "sold-out junior lienor," although it concededly reached that status by the act of its own senior lien foreclosure.

The further bar of section 580d[7] to Bank's deficiency actions was first raised by an affirmative defense of the Simons to Bank's original complaint. Substituted counsel for the Simons later demurred to Bank's first amended complaint and moved for summary adjudication of issues, relying on the bar of the three-month limitation period of section 580a.

In *Roseleaf,* appellant Roseleaf Corporation sold its hotel to Chierighino and his family. The consideration given by the Chierighinos included a note secured by a first deed of trust on the hotel, and three notes each secured by

---

[6] *Walter E. Heller Western, Inc.* v. *Bloxham* (1985) 176 Cal.App.3d [221 Cal.Rptr. 425] is discussed, *post.*

[7] Section 580d, as effective during the pendency of this action, provided in pertinent part: "No judgment shall be rendered for any deficiency upon a note secured by a deed of trust or mortgage upon real property hereafter executed in any case in which the real property has been sold by the mortgagee or trustee under power of sale contained in such mortgage or deed of trust." (Stats. 1941, First Ex. Sess. 1940, ch. 29, § 2, p. 84.)

a second trust deed on three parcels of real property owned by Chierighino. Strangers to the action were beneficiaries of the first trust deeds on these three parcels. After the sale of the hotel, those beneficiaries sold the three parcels by exercising their powers of sale in the first trust deeds. The second trust deeds held by Roseleaf were rendered valueless by exhaustion of their security on completion of the first trust deed sale. Roseleaf sued to recover the full amount unpaid on the three notes secured by the second trust deeds. The trial court entered judgment for Roseleaf, and Chierighino appealed contending that Roseleaf's action was limited by section 580a and barred by sections 580b and 580d.

The Supreme Court found that section 580a did not apply to a third party sold-out junior such as Roseleaf whose security was lost by reason of a nonjudicial foreclosure by another party holding the first deed of trust.[8] The court also held that the three-month limitation period of section 580a did not apply to Roseleaf as a third party sold-out junior lienor. (59 Cal.2d at p. 39.)

Bank erroneously equates itself in the case at bench to the junior lienor in *Roseleaf*. In doing so, it ignores the fact that, unlike *Roseleaf*, it held *both* the senior and junior liens; it seeks to cast itself as the "sold-out junior lienor" *Roseleaf* discussed simply because it exhausted the security for its junior lien by its *own* action in foreclosing its senior lien at private sale.

Thus, the factors which influenced the *Roseleaf* court are not present in the instant case. Bank was not a third party sold-out junior lienholder as was the case in *Roseleaf*. As the holder of both the first and second liens, Bank was fully able to protect its secured position. It was not required to protect its junior lien from its own foreclosure of the senior lien by the investment of additional funds. Its position of dual lienholder eliminated any possibility that Bank, after foreclosure and sale of the liened property under its first lien, might end up with no interest in the secured property, the principal rationale of the court's decision in *Roseleaf*. (59 Cal.2d at p. 41.) In fact, Bank purchased the Simon residence on foreclosing its first lien by a credit bid without putting up any additional funds whatsoever.

---

[8]"Fair value provisions are designed to prevent creditors from buying in at their own sales at deflated prices and realizing double recoveries by holding debtors for large deficiencies. [Citations.] [¶] . . . [¶] The position of a junior lienor whose security is lost through a senior sale is different from that of a selling senior lienor. A selling senior can make certain that the security brings an amount equal to his claim against the debtor or the fair market value, whichever is less, simply by bidding in for that amount. He need not invest any additional funds. The junior lienor, however, is in no better position to protect himself than is the debtor. Either would have to invest additional funds to redeem or buy in at the sale. Equitable considerations favor placing this burden on the debtor, not only because it is his default that provokes the senior sale, but also because he has the benefit of his bargain with *the junior lienor who, unlike the selling senior, might otherwise end up with nothing.*" (59 Cal.2d at pp. 40-41, italics added.)

Bank also relies on *Dickey* v. *Williams* (1966) 240 Cal.App.2d 270 [49 Cal.Rptr. 529] and *Investcal Realty Corp.* v. *Edgar H. Mueller Constr. Co.* (1966) 247 Cal.App.2d 190 [55 Cal.Rptr. 475]. Like *Roseleaf*, both cases are factually distinct from the situation in the instant case. Neither case is one in which the foreclosing senior lienholder was also the junior lienholder of the same property.

In *Dickey*, the court found that a junior lienholder who purchases the secured property at the sale conducted by a foreclosing third party is a sold-out junior lienholder within the holding of *Roseleaf.* (240 Cal.App.2d at p. 272.)

In *Investcal Realty Corp.*, a junior lienor purchased a secured first parcel at the third party senior lienholder's foreclosure sale, and judicially foreclosed on its junior lien on a second and separate parcel. The separate deeds of trust secured the same promissory note. The junior lienor then sought a deficiency judgment for any balance remaining unpaid on the promissory note. The court found the junior lienor was not precluded from judicially foreclosing on the second parcel because it had purchased the first parcel. "[W]e cannot hold Investcal waived its secured interest as to the other lien [on the second parcel] if the junior lienholder [Investcal] purchases the property [the first parcel] at the senior lienholder's trustee sale. [Citation.]" (247 Cal.App.2d at pp. 197-198.)

In a related context, courts have recognized a distinction between a purchasing junior lienor and a nonpurchasing junior lienor in applying the "fair market value" provisions of section 580a. In *Bank of Hemet* v. *United States* (9th Cir. 1981) 643 F.2d 661, the court held that a junior lienor who purchases at the senior's sale is limited by the fair market value provisions of section 580a when seeking a deficiency judgment. "This case is . . . distinguishable from *Roseleaf* in that here the junior lienholder did bid on and purchase the property . . . ." (*Id.* at p. 669.) "In brief, the Bank was not a sold-out junior lienholder as was the case in *Roseleaf*. [¶] The crucial issue is whether this difference requires that section 580a be applied to the Bank. We hold that it does. It follows that its right to a deficiency judgment may be limited. To so limit the deficiency judgment right is consistent with the general purpose of section 580a, *viz.*, to protect against a lienor buying in the property at a deflated price, obtaining a deficiency judgment, and achieving a recovery in excess of the debt by reselling the property at a profit. Not to apply section 580a to the Bank under facts of this case would create the distinct possibility of an excess recovery . . . ." (*Ibid.*)

The Fourth District in *Walter E. Heller Western, Inc.* v. *Bloxham, supra,* 176 Cal.App.3d at page 273 agreed with the Ninth Circuit's holding in *Bank*

*of Hemet, supra,* that the fair market value provisions of section 580a apply to limit the amount of the deficiency judgment recoverable by a junior lienor *purchasing at a senior lienor sale.* The court in *Heller* reiterated that the junior in *Roseleaf* did not purchase at the senior's sale: "To apply the fair value limitations to that junior would result in the amount of his deficiency being limited by the amount of someone else's bid, a factor over which he has no control. However, once a junior chooses to purchase, it is equitable to apply the fair value limitations to him. Any loss to him as creditor by his own underbidding is gained by him as purchaser for a bargain price. [Citation.]" (176 Cal.App.3d at pp. 273-274.)

Similarly, the Second District in *Citrus State Bank* v. *McKendrick* (1989) 215 Cal.App.3d 941 [263 Cal.Rptr. 781] concluded that a junior lienor *who purchases* the secured property at the foreclosure sale of a senior lienor is bound by the three-month limitation period of section 580a. "[T]he language of section 580a could not be clearer. It states that any action for a deficiency judgment 'must be brought within three months' of the foreclosure sale. Given the mandate of section 580a, an action brought more than three months after the sale, as is the case here, is subject to dismissal as untimely." (215 Cal.App.3d at p. 949.)[9]

### D. *Section 580d Bars the Bank's Deficiency Causes of Action*

The case at bench is not, however, one where, as in *Citrus State Bank*, a junior lienor purchases at a third party senior lienor's foreclosure sale. Nor is it a case, as in *Roseleaf*, where a foreclosing senior lienor and the consequent "sold-out junior lienor" whose security is thereby exhausted are separate parties.

The issue presented here was framed in the concurring opinion of Justice Elkington in *Union Bank* v. *Wendland, supra,* as we hereinafter discuss.

We asked the parties to brief the applicability of this district's decision in *Union Bank*, particularly Justice Elkington's concurring opinion. In that case, Wendland purchased a home for $26,500 in 1966. In 1967, he borrowed $28,000 from the Stanford Bank, executing a promissory note and a deed of trust encumbering that real property as security. Subsequently, Wendland borrowed another $6,000 (the second note) from the same lender without

---

[9]The Bank urges that even if section 580a applies to the instant case, the three-month limitation period should not be used to bar the action since the court's decision in *Citrus State Bank* v. *McKendrick, supra,* 215 Cal.App.3d 941, postdates the date of the trustee's sale. We note that the limitation period has been a part of section 580a since its enactment in 1933. We also note that the Ninth Circuit in its 1981 decision in *Bank of Hemet* v. *United States, supra,* specifically mentioned the three-month limitation period of section 580a. (643 F.2d at p. 669.)

giving additional security. Finally, in 1969, Wendland borrowed another $10,973 executing a third promissory note and a second deed of trust on the same residential property. In 1971, Union Bank merged with Stanford Bank and became the holder of the first and third promissory notes and the beneficiary of the two deeds of trust. Wendland defaulted on the payments due under the first note, and the home was sold by the trustee pursuant to the first deed of trust. Union Bank was the purchaser.

In 1972, Union Bank filed a complaint against Wendland on the third note, seeking a personal judgment against Wendland. Wendland denied that he was indebted on the third note and alleged that section 580b, which applies to purchase money transactions, operated to bar the deficiency sought by the bank. After submission of the case, Wendland sought to amend his answer to state that section 580d not 580b barred the bank's claim. The trial court denied the motion to amend and entered judgment in favor of the bank.

Presiding Justice Molinari, writing for the majority, found that the sale under the first deed of trust triggered the operation of section 580d to bar the action on the third note as an action for a deficiency. Justice Molinari's rationale was that the third note, although specifically secured by the second deed of trust, was also a note secured by the first deed of trust by virtue of its dragnet clause, and that the same result would be reached by application of the merger doctrine which provides that a merger of a greater and a lesser estate occurs at law whenever they coincide in the same person without an intermediate estate. (54 Cal.App.3d at pp. 405-406.) "To permit Union Bank to avoid the effect of section 580d by what amounts to a method of paper shuffling, i.e., the execution of the second deed of trust with the same security on which The Stanford Bank [Union Bank's predecessor] relied as security in making the original loan, is to countenance an evasive device and to permit a circumvention of the antideficiency statutes. [¶] . . . Accordingly, if property given as security under a deed of trust securing an original obligation is overvalued, or if, as a result of a combination of the original obligation and a future advance it is overvalued, so as to render the security inadequate, the risk should be that of the lender." (*Id.* at pp. 406-407, fn. omitted.)

Justice Elkington concurred in Justice Molinari's opinion based on the applicability of section 580d without reliance on the effect of a dragnet clause in the senior deed of trust and the merger doctrine. He reiterated that section 580d and its sister sections 580a, 580b, and 580c are an expression of California's strong public policy that lenders shall be strictly limited in their right to deficiency judgments after foreclosure on real property security given for their loans. (54 Cal.App.3d at p. 407.)

Justice Elkington then focused, as we do, on the issue of "whether by making two successive loans *on the security of the same property,* the lender was permitted by private foreclosure under the 'first deed of trust's' power of sale (1) to obtain title to the real property security, and then (2) hold the borrower liable for a deficiency, i.e., the balance due on 'the third note,' the security for which had been rendered valueless by the lender's own act." (54 Cal.App.3d at p. 409, italics in original.)

Justice Elkington concluded that the lender could not take a deficiency judgment under such circumstances. "*It is opined that such a practice would be contrary to the provisions of section 580d, and to the policy expressed thereby. It would permit the lender to frustrate the statute's public purpose by obtaining the real property security at a private foreclosure sale thus denying the borrower any right of redemption, and also obtaining a judgment for the remaining deficiency. Such a transaction should be construed in such a manner as 'to avoid thwarting the purpose of section 580d.'* [Citation.]" (54 Cal.App.3d at p. 409, italics added.)

Finally, Justice Elkington closed his concurrence by distinguishing Union Bank's position from that of the lender in *Roseleaf Corp.* v. *Chierighino, supra:* "Nor do I believe that the lender bank, in the context of this case, should be equated with a third party who might make a loan taking as security a second deed of trust on the same real property. It is true that when the security of a second deed of trust is rendered valueless by a prior foreclosure, through no fault or action of the second lender (see *Brown* v. *Jensen* [(1953)] 41 Cal.2d 193, 195-196 [259 P.2d 425]), that lender for equitable reasons will ordinarily be permitted an action against the debtor on the second obligation. (See *Roseleaf Corp.* v. *Chierighino, supra,* 59 Cal.2d 35, 43-44.) But such principles are obviously inapplicable in a factual context such as that before us, where the single lender with the choice of a private or judicial foreclosure sale, opts for the private sale. Having elected to proceed by way of a private sale under the 'first deed of trust's' power of sale the lender in reason, and equity, was bound by that election. Having taken title to the subject real property in that manner, it was precluded by section 580d from also taking a deficiency judgment." (54 Cal.App.3d at p. 410, fn. omitted.)

Bank contends that the holding of *Wendland* is inapplicable to this case because its first deed of trust did not contain a dragnet clause and because, in the absence of such a clause, the merger doctrine does not apply. Bank also maintains that Justice Elkington's concurring opinion does not comport with the statutory language of section 580d or the holding of *Roseleaf,* in that section 580d does not apply to a "sold-out junior lienor," continuing to insist

it meets that definition although it can be classified as such only because it literally "sold-out" itself by foreclosing on its senior lien, and no third party's foreclosure or purchase affected the security of its junior lien.

█ We believe Justice Elkington correctly perceived that section 580d bars a deficiency action of the type Bank has here initiated, regardless of whether a dragnet clause exists in the senior deed of trust "merg[ing]" the junior and senior loans which arguably are, as merged, secured by the senior lien. The Supreme Court in *Roseleaf* found the purpose of section 580d is "to put judicial enforcement on a parity with private enforcement. . . . If the creditor wishes a deficiency judgment, his sale is subject to statutory redemption rights. If he wishes a sale resulting in nonredeemable title, *he must forego the right to a deficiency judgment.* In either case the debtor is protected. [¶] The purpose of achieving a parity of remedies would not be served by applying section 580d against a nonselling junior lienor. . . . He may redeem from a senior judicial sale [§ 701], or he may obtain a deficiency judgment. [Citations.] After a senior private sale, the junior has no right to redeem. This disparity of rights would be aggravated were he also denied a right to a deficiency judgment by section 580d . . . . *The junior's right to recover should not be controlled by the whim of the senior . . . .*" (*Roseleaf Corp.* v. *Chierighino, supra,* 59 Cal.2d at pp. 43-44, italics added.)

Neither will a parity of creditor's remedies be served if Bank here is permitted to make successive loans secured by a senior and junior deed of trust on the same property; utilize its power of sale to foreclose the senior lien, thereby eliminating the Simons' right to redeem; and having so terminated that right of redemption, obtain a deficiency judgment against the Simons on the junior obligation whose security Bank, thus, made the choice to eliminate.

Unlike a true third party sold-out junior, Bank's right to recover as a junior lienor which is also the purchasing senior lienor is obviously not controlled by the "whim of the senior." We will not sanction the creation of multiple trust deeds on the same property, securing loans represented by successive promissory notes from the same debtor, as a means of circumventing the provisions of section 580d.[10] The elevation of the form of such a contrived procedure over its easily perceived substance would deal a mortal blow to

[10]Nor can we accept Bank's contention that the Simons waived the provisions of section 580d by agreeing to two separate loans. "It is well settled that the proscriptions of section 580d cannot be avoided through artifice (*Passanisi* v. *Merit-McBride Realtors, Inc.* (1987) 190 Cal.App.3d 1496, 1508), nor can the debtor be compelled to waive its provisions in advance (*Freedland* v. *Greco* (1955) 45 Cal.2d 462, 467-468). This is 'because the antideficiency legislation was established for a public reason and cannot be contravened by a private agreement. [Citation.] In determining whether a particular recovery is precluded, we must

the antideficiency legislation of this state. Assuming, arguendo, legitimate reasons do exist to divide a loan to a debtor into multiple notes thus secured, section 580d must nonetheless be viewed as controlling where, as here, the senior and junior lenders and lienors are identical and those liens are placed on the same real property. Otherwise, creditors would be free to structure their loans to a single debtor, and the security therefor, so as to obtain on default the secured property on a trustee's sale under a senior deed of trust; thereby eliminate the debtor's right of redemption thereto; and thereafter effect an excessive recovery by obtaining a deficiency judgment against that debtor on an obligation secured by a junior lien the creditor chose to eliminate. (Cf., e.g., *Freedland* v. *Greco* (1955) 45 Cal.2d 462, 467 [289 P.2d 463] [Section 580d was sought to be circumvented by the device of two notes of $7,000 each representing *one* $7,000 debt. One note was secured by a second deed of trust, the other by a chattel mortgage. Plaintiff foreclosed on the deed of trust and chattel mortgage, leaving a deficiency balance on the underlying debt of $7,000. Judgment for that deficiency was reversed. "It is unreasonable to say the Legislature intended that section 580d could be circumvented by such a manifestly evasive device. In such a situation the legislative intent must have been that the two notes are, in legal contemplation and under section 580d, one . . . ."].)

■ The antideficiency statutes are to be "liberally construed to effectuate the specific legislative purpose behind them. . . . The courts have exhibited a very hospitable attitude toward the legislative policy underlying the anti-deficiency legislation and have given it a broad and liberal construction that often goes beyond the narrow bounds of the statutory language. [Citation.] And the legislative purpose against deficiency judgments may not be subverted." (*Union Bank* v. *Wendland, supra,* 54 Cal.App.3d at p. 408 (conc. opn. of Elkington, J.) internal quotation marks and brackets omitted.) "The objective sought to be achieved by a statute as well as the evil to be prevented is of prime consequence in its interpretation." (*Western Oil & Gas Assn.* v. *Monterey Bay Unified Air Pollution Control Dist.* (1989) 49 Cal.3d 408, 426 [261 Cal.Rptr. 384, 777 P.2d 157], internal quotation marks and brackets omitted; accord, *In re Marriage of Morrison* (1978) 20 Cal.3d 437, 447 [143 Cal.Rptr. 139, 573 P.2d 41]; *Roland Co.* v. *Walling* (1946) 326 U.S. 657, 671 [90 L.Ed. 383, 390-391, 66 S.Ct. 413] ["This purpose remains the key to the meaning of the words . . . ."]; *American Tobacco Co.* v. *Superior Court* (1989) 208 Cal.App.3d 480, 486 [255 Cal.Rptr. 280].)

We, therefore, conclude that section 580d applies to bar Bank's causes of action for a deficiency judgment. That conclusion moots the question of the

consider whether the policy behind section 580d would be violated by such a recovery. [Citation.]' (*Commonwealth Mortgage Assurance Co.* v. *Superior Court* (1989) 211 Cal.App.3d 508, 515.)" (*Rettner* v. *Shepherd* (1991) 231 Cal.App.3d 943, 952 [282 Cal.Rptr. 687], parallel citations omitted.)

application of the three-month limitation period of section 580a to the filing of Bank's complaint therefor.

III. DISPOSITION

Let a peremptory writ of mandate issue directing respondent superior court to vacate its orders of April 25, 1991, overruling petitioners' demurrer and denying their motion for summary adjudication, and to enter a new order striking the first two causes of action from the complaint.

Kline, P. J., and Benson, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied May 28, 1992. Lucas, C. J., and Panelli, J., did not participate therein.