Filed 10/26/20  P. v. Velez CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ALEXANDER RIVERA VELEZ,<br><br>    Defendant and Appellant. | B301580<br><br>(Los Angeles County<br> Super. Ct. No. VA146372) |

        APPEAL from a judgment of the Superior Court of Los Angeles County.  Roger T. Ito, Judge.  Affirmed.

        Linda L. Gordon, under appointment by the Court of Appeal, for Defendant and Appellant.

        No appearance for Plaintiff and Respondent.

_____

A jury convicted Alexander Velez of second degree robbery. Velez appealed the judgment, and his appointed counsel filed an opening brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*). We affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

The morning of September 27, 2017, Sharlecia Baldeo drove her three sons to Don Kanabe Park in a minivan. She planned to drop off a lunch for another child who attended a program at the park. Baldeo's oldest child, Justin, was 11 years old and seated in the middle row of the van, on the passenger side. Her other children, who were six and eight years old, were seated in the third row in car seats.

Baldeo parked the van and got out in order to give the lunch to the program director. Her children remained inside the van.

While Baldeo was talking to the program director, Justin saw a man, whom he later identified as Velez, walk past the van. Velez opened the van's front passenger-side door and grabbed Baldeo's purse and cell phone. Baldeo's purse contained a blank money order for $800, which she had planned to use to pay her rent.

Justin and his brothers started yelling. Velez showed Justin what appeared to be a gun and told him to "shut the fuck up." Justin was scared. Velez took off with the purse and phone.

Justin opened the van door and yelled for his mother. Baldeo saw a man, whom she later identified as Velez, getting into a Ford Expedition. She committed the license plate number to memory. Records showed the vehicle was registered in Velez's girlfriend's name at an address where Velez was living. Police

2

searched the home and found a replica handgun with an orange tip, which was hidden in a closet underneath male clothing.

Sometime after the robbery, a man named Carlos Pena cashed Baldeo's money order. According to Pena, Velez paid him $200 to do so. Baldeo received notice that her money order had been cashed, and she contacted the police.

Velez was charged by information with one count of second degree robbery (Pen. Code, § 211)[1]. It was further alleged that he had suffered two prior strike convictions (§§ 667, subd. (d), 1170, subd. (b)), which also qualified as serious felony convictions (§ 667, subd. (a)(1)).

Prior to trial, Velez, a self-represented litigant, filed a motion to suppress evidence pursuant to section 1538.5. Velez argued the following: (1) the police were searching for a woman's bag in the private residence of an innocent woman; (2) the search was unreasonable due to the "time span of the 'offense"; (3) the search warrant did not specify what the police were looking for; (4) the police confiscated Velez's son's toy gun; and (5) the police improperly took Velez's cellphone. At the hearing to consider the motion, the prosecution produced the search warrant, which was signed six weeks after the crime was committed and stated the police were looking for a leather purse, any firearms, and any cell phones. In addition, the investigating officer testified to the steps he took between the crime and the date he obtained the search warrant. The court denied Velez's motion as well as his subsequent "motion to appeal."

---

[1] All undesignated section references are to the Penal Code.

At trial, the prosecution presented evidence establishing the facts summarized above.  The jury convicted Velez of robbery.  Velez then admitted suffering a prior strike conviction, which also constituted a serious felony conviction.

The court sentenced Velez to 11 years in prison, consisting of the mid term of three years, doubled because of the prior strike, plus five years for the prior serious felony conviction.  The court imposed various fines and fees.  It awarded Velez 746 days of custody credit, consisting of 649 days of actual time served, plus 97 days of conduct credit.  Velez filed a timely notice of appeal.

## DISCUSSION

We appointed counsel to represent Velez on appeal.  Appointed counsel filed an opening brief on appeal pursuant to *Wende, supra,* 25 Cal.3d 436, requesting independent review of the record on appeal for any arguable issues.  We notified Velez by letter that he could submit any arguments or issues that he wished our court to review.  Velez filed a supplemental brief,[2] which we now address.

Velez first asks us to review the denial of his section 1538.5 motion, including the facts, circumstances, and validity of the search warrant.  The only specific issue he identifies concerns whether the police provided the owner of the property a copy of the search warrant.  Police officers, however, are generally not required to display or provide a copy of a search warrant while it is being executed, and their failure to do so is not a ground for suppressing evidence.  (See *People v. Calabrese* (2002) 101

---

[2]     Though titled a Petition for Writ of Habeas Corpus, Velez's counsel informed the court the document should be considered Velez's supplemental brief.  We have done so.

4

Cal.App.4th 79, 85 ["Because the officers were not required to display the warrant or give [the defendant] a copy of it, the trial court was correct to deny the motion to suppress without permitting [the defendant] to offer evidence on that issue."]; *People v. Rodrigues-Fernandez* (1991) 235 Cal.App.3d 543, 553 ["in California there is no statutory or constitutional requirement that a search warrant be exhibited as a prerequisite to execute it"].) Whether the owner received a copy of the search warrant, therefore, is irrelevant. The court did not err in denying Velez's section 1538.5 motion.

Velez next urges us to remand the case so he can present documentary evidence supporting a request to strike the five year prior serious felony enhancement pursuant to Senate Bill No. 1393 (Reg. Sess. 2017–2018). Velez, however, fails to explain what evidence he would present or why he failed to present it at sentencing. Moreover, contrary to his assertions, the ongoing Covid-19 epidemic does not support striking the enhancement. Velez, therefore, has not shown remand is necessary.

Velez next contends there is insufficient evidence showing he had the requisite mens rea for robbery. Robbery is "larceny with the aggravating circumstances that 'the property is taken from the person or presence of another . . .' and 'is accomplished by the use of force or by putting the victim in fear of injury.' " (*People v. Anderson* (2011) 51 Cal.4th 989, 994.) As best we can tell, Velez's argument is that he did not commit a robbery because he did not intend to instill fear in Justin by telling him to "shut the fuck up"; rather, he was simply startled by the child. Robbery, however, does not require a specific intent to cause the victim to experience fear. (*Id*. at p. 995.) Velez also ignores Justin's testimony that Velez showed him something that

appeared to be a gun.  This testimony alone provides sufficient evidence from which a reasonable juror could conclude the taking was accomplished by putting Justin in fear of injury.

Velez alternatively asserts he could not be convicted of robbery because Justin did not own the purse or phone that he took from the van.  Contrary to Velez's suggestion, it is well established that the victim need not be the owner of the property for there to be a robbery.  (*People v. Scott* (2009) 45 Cal.4th 743, 749.)  Instead, the victim need only be in constructive possession of the property, which requires "some type of 'special relationship' with the owner of the property sufficient to demonstrate that the victim had authority or responsibility to protect the stolen property on behalf of the owner."  (*Id.* at p. 753.)  Here, the evidence shows the purse and phone belonged to Justin's mother, which she left in the family van with Justin while she momentarily left to speak with someone outside.  This is sufficient to show Justin had a special relationship with the owner of the property and was in constructive possession of it.  (See *People v. Hutchinson* (2018) 20 Cal.App.5th 539, 548 [affirming a robbery conviction after finding the minor victim had constructive possession of her parents' property in the family home].)

Velez next argues the trial court erred in awarding him 97 days of presentence conduct credit, which was 15 percent of his actual period of confinement.  According to Velez, under Proposition 57 (Gen. Elec. (Nov. 8, 2016)), he was entitled to conduct credit at a rate of 20 percent.  Velez is mistaken.

Proposition 57 added section 32 of article I of the California Constitution, which gives the Department of Corrections and Rehabilitation the "authority to award credits earned for good

6

behavior and approved rehabilitative or educational achievements." (Cal. Const., art. I, § 32, subd. (2).) Proposition 57 did not alter presentence custody credits. Such credits remain subject to the requirements found in the Penal Code and are awarded by courts, rather than the Department of Corrections and Rehabilitation. (See Cal. Code Regs., tit. 15, § 3043.1 ["Credit applied prior to sentencing is awarded by the sentencing court pursuant to sections 2900.1, 2900.5, 2933.1 and 4019 of the Penal Code."].) Here, the trial court properly calculated Velez's conduct credits under section 2933.1, which mandates that for persons convicted of certain felonies, including second degree robbery, the maximum credit that may be earned against a period of confinement in county jail following arrest and prior to placement in the custody of the Director of Corrections shall not exceed 15 percent of the actual period of confinement.

Finally, Velez briefly contends the prosecution failed to disclose all exculpatory evidence and the verdicts used in the case were ambiguous. We find no support for either contention in the record.

## DISPOSITION

After independently reviewing the record on appeal, we find appointed counsel has fulfilled her duty and no arguable issues exist. (*Wende, supra*, 25 Cal.3d 436, *People v. Kelly* (2006) 40 Cal.4th 106.)

BIGELOW, P. J.

We Concur:

STRATTON, J.          WILEY, J.

7