[No. B119099. Second Dist., Div. Four. Dec. 22, 1998.]

In re the Marriage of ANTHONY and CHARLOTTE G. OROPALLO.
ANTHONY OROPALLO, JR., Appellant, v.
CHARLOTTE G. OROPALLO, Respondent;
ANDERSON & SALISBURY et al., Respondents.

**COUNSEL**

Rosenfeld, Meyer & Susman and Ovvie Miller for Appellant Husband.

Wilson, Kenna & Borys, Timothy W. Kenna and Guy J. Gorlick for Respondent Wife and Respondent Law Firm.

**OPINION**

**CURRY, J.**—This case involves a wife given a promissory note secured by second deeds of trust on several pieces of real property as part of a marital dissolution. We are called on to decide whether her attempt to collect the debt from her husband is subject to the antideficiency statutes. The court below ruled in her favor because a senior lienholder had foreclosed on one or two of the six properties securing the debt. We hold that the wife's decision to proceed by way of nonjudicial trustee's sale on the remaining properties precluded her later attempt to seek a deficiency judgment on the note through the family law court, and reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 1, 1993, a judgment was entered dissolving the marriage of Charlotte and Anthony Oropallo. Anthony[1] was awarded the couple's real estate and their interest in a company called American Brass and Aluminum Foundry, Inc.[2] He was obligated to provide monthly spousal support, and to make an equalizing payment of $375,000 to Charlotte, payable on the following schedule: $50,000 on or before October 1, 1993, $50,000 on or before October 1, 1994, and the balance on or before October 1, 1997. In addition, Anthony was to make monthly interest payments beginning August 1, 1993, "execute a promissory note embodying these terms of payment and providing for the payment of reasonable attorneys' fees and costs in the event of collection," and "secure his obligation to [Charlotte] by 2nd trust deeds covering all of [his] interest in the real estate interests awarded or confirmed to him, above" except with respect to the Santa Fe property.

On July 12, 1993, Anthony had executed a promissory note payable to Charlotte in accordance with the terms of the judgment of dissolution. The note was "secured by Deeds of Trust to T.D. Service Company, a California corporation, as Trustee." In addition, the note contained an acceleration clause: "Should any payment not be made when due and such default not cured within 5 days, or if I sell my interest in American Brass and Aluminum Foundry, Inc. or in the real property located at 2400-2414 Santa Fe Avenue, Los Angeles, California, the entire balance of principal and interest shall immediately become due at the option of the holder of this note."

Anthony failed to make interest payments, starting with the payment due December 1, 1993, and failed to make the principal reduction payment due October 1, 1993. Charlotte held trustee's sales on four of six properties securing the promissory note in August 1994.[3]

Almost three years later, on June 26, 1997, Charlotte filed an application in the family law court for issuance of a writ of execution based on the September 1993 judgment of dissolution. According to her declaration, proceeds from the sales of the properties on which she had foreclosed in

---

[1]For clarity's sake, we refer to the parties by their first names.

[2]The couple's real estate interests included seven properties located at: (1) Santa Fe Avenue, Los Angeles; (2) Oak Street, Pasadena; (3) Garvey Avenue, El Monte (a leasehold interest); (4) Fallbrook, California; (5) South Arroyo Drive, San Gabriel; (6) Lucerne Valley, California; (7) Riverside, California.

[3]Although the record indicates that Charlotte initiated nonjudicial foreclosure proceedings on five properties, the parties have informed us that only four were sold under her deeds of trust.

1994 amounted to $110,600. She had sued her former attorneys for malpractice,[4] based on her understanding that she would be unable to collect the deficiency between the amount recovered from the sale of the foreclosed properties and the amount due on the promissory note. In their defense, her former attorneys contended that she had available a means of satisfying the judgment in the family law courts. She filed the application for writ of execution, asking the court to decide "whether the marital dissolution judgment is either satisfied in full pursuant to *Rettner* [v. *Shepherd* (1991) 231 Cal.App.3d 943 [282 Cal.Rptr. 687][5]] or that the marital dissolution judgment is only partially satisfied pursuant to *Lipka* [v. *Lipka* (1963) 60 Cal.2d 472 [35 Cal.Rptr. 71, 386 P.2d 671][6]] and that it is still enforceable by Writ of Execution or other appropriate means."

The court denied her application by order dated September 23, 1997. Anderson and Anderson & Salisbury moved for reconsideration under Code of Civil Procedure section 1008 on the ground that "new law has been discovered which would affect the court's ruling on the petition for the writ of execution." The moving papers referred the court to *Conley* v. *Matthes* (1997) 56 Cal.App.4th 1453 [66 Cal.Rptr.2d 518], which had been published a few days after the original hearing. In *Conley*, the primary issue was whether the sale of two properties was a "purchase money transaction" subject to Code of Civil Procedure section 580b, a provision not relevant here. However, because the properties securing the debt had been foreclosed by a senior lienholder, the court noted prior to discussing the main issue: "[J]unior trust deed holders who are 'sold out' by a senior's foreclosure sale are not precluded by the one-action rule or the trustee's sale bar to deficiency judgments from pursuing a separate action on their note unless the

---

[4]Charlotte had been represented by Anderson & Salisbury and Clifford R. Anderson, Jr., in the marital dissolution proceeding.

[5]In *Rettner*, the judgment creditor accepted in satisfaction of a 1979 judgment, a note and deed of trust from the judgment debtor. The note expressly stated that it " 'represent[ed] the money judgment[.]' " (*Rettner* v. *Shepherd* (1991) 231 Cal.App.3d 943, 951 [282 Cal.Rptr. 687], italics omitted.) When the note became past due, the creditor foreclosed on the property for a credit bid of less than the original judgment and then proceeded against the debtor for the balance. The debtor contended that there was no right to a deficiency judgment under Code of Civil Procedure section 580d, which applies only to secured debt and which is discussed in greater detail below. The creditor contended he was attempting to recover on the original *unsecured* judgment debt and so the provisions governing secured debt did not apply. The court sided with the debtor, noting that the creditor had two choices: "[H]e could attempt to enforce his judgment as an unsecured creditor under the provisions [governing judgments], or he could give up those rights in exchange for a promissory note secured by valuable real property." (*Rettner* v. *Shepherd, supra,* 231 Cal.App.3d at p. 952.) He could not both "get the benefits enjoyed by secured creditors while avoiding the proscriptions of the antideficiency rules." (*Ibid.*)

[6]*Lipka* held that "[a] court may secure payments to a wife made in lieu of a division of community property in kind by granting the wife a lien upon the community property awarded to the husband. [Citations.]" (*Lipka* v. *Lipka* (1963) 60 Cal.2d 472, 479 [35 Cal.Rptr. 71, 386 P.2d 671].)

note constitutes a purchase money note." (*Conley* v. *Matthes, supra,* at p. 1460.)

At the hearing on the motion for reconsideration, the parties stipulated to the fact that one of the six properties securing Anthony's note was foreclosed on by the holder of a first deed of trust.[7] The court granted the motion for reconsideration, stating in its order: "1. The marital dissolution agreement entered into between petitioner Charlotte Oropallo and respondent Anthony Oropallo which provided for a $375,000.00 equalization payment, did not constitute a purchase money note. [¶] 2. As stipulated by the parties, one of five [*sic*] pieces of property to which Charlotte Oropallo had been awarded a Second Deed of Trust as security for the aforementioned payment, was foreclosed upon by a senior lienholder. As a result of the senior lienholders' foreclosure and the fact that there was no purchase money note, there is no anti-deficiency bar to petitioner Charlotte Oropallo's ability to execute the $375,000.00 note against other assets held by respondent Anthony Oropallo." Anthony appealed from this order.

### DISCUSSION

### I

██ Anthony contends that *Conley* v. *Matthes, supra,* 56 Cal.App.4th 1453, was not new law, and that the motion for reconsideration should not have been granted. Section 1008 of the Code of Civil Procedure forbids trial courts from reconsidering orders previously rendered in the action—either their own or those made by other judges—"unless made according to this section." (§ 1008, subd. (e).) A motion made in accordance with section 1008 must include reference to new or different facts, circumstances, or law before the earlier order may be reconsidered.

It is true that the only new holding in *Conley* v. *Matthes*—that a particular transaction was a purchase money transaction despite its outward appearance—had nothing to do with the Oropallos' situation. The rule that junior trust deed holders are not precluded from obtaining a deficiency judgment when the first trust deed holder obtains the security through foreclosure dates back to at least 1963. (See *Roseleaf Corp.* v. *Chierighino* (1963) 59 Cal.2d 35 [27 Cal.Rptr. 873, 378 P.2d 97].) Having said that, however, now that the case is before this court, we are free to review both orders and render an opinion based on the correct rule of law.

---

[7]At oral argument, the parties informed us that in fact two of the six properties were foreclosed on by senior lienholders.

## II

■ "In California, as in most states, a creditor's right to enforce a debt secured by a mortgage or deed of trust on real property is restricted by statute. Under California law, 'the creditor must rely upon his security before enforcing the debt. (Code Civ. Proc., §§ 580a, 725a, 726.) If the security is insufficient, his right to a judgment against the debtor for the deficiency may be limited or barred by sections 580a, 580b, 580d, or 726 of the Code of Civil Procedure.' [Citation.]" (*Guild Mortgage Co.* v. *Heller* (1987) 193 Cal.App.3d 1505, 1510 [239 Cal.Rptr. 59], fn. omitted, quoting *Roseleaf Corp.* v. *Chierighino, supra*, 59 Cal.2d at pp. 38-39.)

Code of Civil Procedure section 580a regulates the manner in which a secured creditor may obtain a deficiency judgment[8] "for the balance due upon an obligation for the payment of which a deed of trust or mortgage with power of sale upon real property or any interest therein was given as security" after "the exercise of the power of sale in such deed of trust or mortgage." In other words, it regulates how the creditor must proceed after obtaining or selling the security through a nonjudicial foreclosure or trustee's sale. It has been rendered nearly obsolete by the provisions of sections 580b and 580d. (See 4 Miller & Starr, Cal. Real Estate, *supra*, Deeds of Trust and Mortgages, § 9:114, p. 376 ["On its face, this statute only applies when the beneficiary seeks a money judgment following a nonjudicial sale, and since a creditor is not entitled to a deficiency judgment after a nonjudicial sale, the statute would appear to be superfluous." (Fn. omitted.)]; 3 Witkin, Summary of Cal. Law (9th ed. 1987) Security Transactions in Real Property, § 157, p. 657 ["The importance of C.C.P. 580a was greatly diminished with the passage of C.C.P. 580d [citation], prohibiting a deficiency judgment following a nonjudicial sale, but it is still applied when a junior lienor purchases at the [senior lienholder's] sale. [Citation.]"].)

Code of Civil Procedure section 580b prohibits *all* deficiency judgments "after a sale of real property . . . under a deed of trust or mortgage given to the vendor to secure payment of the balance of the purchase price of that real property . . . ." Thus, where a purchase money transaction is involved, no deficiency may be collected from the debtor/purchaser whether the creditor/vendor proceeds against the security by way of judicial or nonjudicial foreclosure or trustee's sale.

Code of Civil Procedure section 580d prohibits deficiency judgments on all notes "secured by a deed of trust or mortgage upon real property . . . in

---

[8]"A 'deficiency judgment' is a personal judgment against a debtor for a recovery of the secured debt measured by the difference between the debt and the net proceeds received from the foreclosure sale." (4 Miller & Starr, Cal. Real Estate (2d ed. 1989) Deeds of Trust and Mortgages, § 9:156, p. 524, fn. omitted.)

any case in which the real property . . . has been sold *by the mortgagee or trustee under power of sale contained in the mortgage or deed of trust.*" The effect of section 580d is that " 'the beneficiary of a deed of trust executed after 1939 cannot hold the debtor for a deficiency unless he uses the remedy of judicial foreclosure . . . .' " (*Simon v. Superior Court* (1992) 4 Cal.App.4th 63, 71 [5 Cal.Rptr.2d 428]; see 3 Witkin, Summary of Cal. Law, *supra,* Security Transactions in Real Property, § 175, p. 677 ["In 1939, C.C.P. 580d was enacted, *abolishing any deficiency judgment* on a note after sale under power of sale in a mortgage or deed of trust *thereafter executed* (excepting those authorized by the Corporation Commissioner or under the Public Utilities Law). The effect is that the beneficiary of a deed of trust executed after 1939 cannot hold the debtor for a deficiency unless he uses the remedy of judicial foreclosure [citation] with its accompanying right of redemption [citation]." (Original italics.)].)

Neither Code of Civil Procedure section 580b nor section 580d makes specific reference to the relatively common practice of using a single piece of real property to secure more than one debt, and at first, there was a question about whether either provision applied where the security was "sold out" from under a junior lienholder by a senior lienholder. In *Brown v. Jensen* (1953) 41 Cal.2d 193 [259 P.2d 425], the creditors under a second trust deed which was also a purchase money trust deed sought to recover under their note contending that since the property had been taken by the first trust deed owner, they had become unsecured creditors. The court rejected that reasoning, and concluded that section 580b applies even though it precludes the second trust deed holder from recovering anything: "The section states that in *no event* shall there be a deficiency judgment, that is, whether there is a sale under the power of sale or sale under foreclosure, or no sale because the security has become valueless or is exhausted. The purpose of the 'after sale' reference in the section is that the security be exhausted and that result follows after a sale under the first trust deed." (41 Cal.2d at p. 198, original italics.)

In *Roseleaf Corp. v. Chierighino, supra,* 59 Cal.2d 35, the court was called on to decide whether the same result would follow where the transaction involved a non-purchase-money second trust deed governed by Code of Civil Procedure section 580d. The court concluded that it would not, and that the second or junior lienholder could obtain a deficiency after the senior's private sale of the property. The distinction, according to the court, lay in the fact that under section 580d, unlike section 580b, the Legislature gave creditors an election of remedies and a way to preserve the right to a deficiency: "If the creditor wishes a deficiency judgment, his sale is subject to statutory redemption rights. If he wishes a sale resulting in nonredeemable

title, he must forego the right to a deficiency judgment." (*Roseleaf Corp.* v. *Chierighino, supra,* 59 Cal.2d at pp. 43-44.) Because the statute permits deficiency judgments after judicial foreclosures, when the senior lienholder choses that remedy, both he and the junior could obtain a deficiency judgment. When the senior chose a nonjudicial remedy, he would be precluded from obtaining a deficiency. But, the court believed, it made no sense for the junior's right to recover a deficiency to be "controlled by the whim of the senior." (*Id.* at p. 44.)

■ Charlotte persuaded the family law court that *Roseleaf* was applicable here because one or two of the six properties which secured Anthony's note were obtained by a senior lienholder through private foreclosure. This represents too narrow a focus on the holding in *Roseleaf.* It was not merely the fact that the senior lienholder moved against the security which led to the court's decision, but the fact that the junior lienholder was never given the chance to make its own election between judicial and nonjudicial remedies. Once the junior lienholder makes the decision to proceed against any of the real property securing the debt under the power of sale contained in the mortgage or deed of trust, Code of Civil Procedure section 580d precludes any deficiency judgment.

The case of *Simon* v. *Superior Court, supra,* 4 Cal.App.4th 63 supports our conclusion. There, the lender tried to avoid the provisions of Code of Civil Procedure section 580d and bring itself within the *Roseleaf* exception by having the borrower sign two promissory notes in different amounts which were secured by separate deeds of trust on the same property. One of the deeds of trust was "senior" to the other. The lender held its private foreclosure sale on the "senior" note, and then sought to recover judicially on its "junior" lien. In determining whether section 580 applied to preclude recovery, the court quoted and adopted the concurring opinion of Justice Elkington in *Union Bank* v. *Wendland* (1976) 54 Cal.App.3d 393 [126 Cal.Rptr. 549], an earlier case involving a similar situation where a first and third deed of trust were held by the same party: " 'Nor do I believe that the lender bank, in the context of this case, should be equated with a third party who might make a loan taking as security a second deed of trust on the same real property. It is true that when the security of a second deed of trust is rendered valueless by a prior foreclosure, through no fault or action of the second lender [citation], that lender for equitable reasons will ordinarily be permitted an action against the debtor on the second obligation. (See *Roseleaf Corp.* v. *Chierighino, supra,* 59 Cal.2d 35, 43-44.) But such principles are obviously inapplicable in a factual context such as that before us, where the single lender with the choice of a private or judicial foreclosure sale, opts for the private sale. *Having elected to proceed by way of a private sale under*

*the "first deed of trust's" power of sale the lender in reason, and equity, was bound by that election. Having taken title to the subject real property in that manner, it was precluded by section 580d from also taking a deficiency judgment.'* [Citation.]" (*Simon* v. *Superior Court, supra,* 4 Cal.App.4th at p. 76, italics added, fn. omitted, quoting *Union Bank* v. *Wendland, supra,* 54 Cal.App.3d at p. 410.) The court in *Simon* emphasized that "[u]nlike a true third party sold-out junior," the lender's right to recover was "obviously not controlled by the 'whim of the senior'" where it had chosen to pursue nonjudicial remedies to enforce its first deed of trust. (4 Cal.App.4th at p. 77.)

Our conclusion is also supported by the Supreme Court's decision in a case involving multiple security given for a single debt, *Freedland* v. *Greco* (1955) 45 Cal.2d 462 [289 P.2d 463]. There the debtor executed two identical promissory notes for the same $7,000 debt, one secured by chattel and the other secured by real property. The question arose whether, after proceeding through nonjudicial foreclosure against the real property, the creditor could thereafter commence an action for judicial foreclosure as to the chattel and obtain a deficiency judgment for the remainder due on the note. The court concluded there could be no deficiency once the creditor had proceeded by way of nonjudicial foreclosure against the real property securing the debt: "If, in the instant case, there had been only one note, secured by a chattel mortgage as well as a trust deed, which represented the debt of defendant to plaintiffs, it is clear that plaintiffs would not be entitled to a deficiency judgment under the plain wording of section 580d, *supra*. It would be a note 'secured by a deed of trust upon real property' upon which there could not be a judgment for 'any' deficiency. . . . Thus, if the note is secured by a trust deed on the real property the section applies even though it may also be secured by other security." (*Freedland* v. *Greco, supra,* 45 Cal.2d at pp. 465-466.)

Referring to two earlier cases, *Hatch* v. *Security-First Nat. Bank* (1942) 19 Cal.2d 254 [120 P.2d 869] and *Mortgage Guarantee Co.* v. *Sampsell* (1942) 51 Cal.App.2d 180 [124 P.2d 353], which held that after a creditor has foreclosed nonjudicially on one of several pieces of property which secure a debt, it may continue to exhaust the additional security through nonjudicial foreclosure without violating the antideficiency statutes, the court in *Freedland* explained: "The Hatch and Mortgage Guarantee cases . . . stress, and are based on, the proposition that the pursuit of additional security is not a deficiency judgment, *the implication being that if it were the creditor could not prevail*." (*Freedland* v. *Greco, supra,* 45 Cal.2d at p. 466, italics added; see also 4 Miller & Starr, Cal. Real Estate, *supra*, Deeds of Trust and Mortgages, § 9:156, pp. 528-529 ["When the beneficiary holds two or more

deeds of trust on separate parcels of property to secure the same debt, he can foreclose the lien on one parcel of real property by a trustee's sale and then proceed to foreclose the liens on the remaining parcels by non-judicial sales. When the same debt is secured by a lien on real property and also by a security interest in personal property or a pledge of a negotiable instrument, he can foreclose the deed of trust by a trustee's sale and also enforce the additional security on the personal property to the extent necessary to satisfy the debt. In each case, however, once the beneficiary has exercised the power of sale and the property has been sold, the beneficiary cannot recover a personal judgment against the trustor either before or after he has enforced the additional security." (Fns. omitted.)].)

*Simon* and *Freedland* stand for the proposition that a creditor's election to proceed nonjudicially to enforce a secured debt is a binding election and has significant consequences. Under Code of Civil Procedure section 580d's express terms, "No judgment shall be rendered for any deficiency upon a note secured by a deed of trust . . . in any case in which the real property . . . has been sold by the . . . trustee under power of sale contained in the . . . deed of trust." Having elected to collect the debt by selling four of six of the properties securing the debt nonjudicially, Charlotte brought herself squarely within the provisions of section 580d and could not thereafter obtain a deficiency judgment against Anthony. Her inability to proceed is not due to the actions of the senior lienholder in taking one or two of the properties. It is due to her own election to forego judicial remedies in favor of the expeditious process of enforcing the power of sale clause in the deeds of trust on the remaining four.[9]

Charlotte urges us to disregard Code of Civil Procedure section 580d because the debt arose in the context of a marital dissolution, rather than a commercial setting. We are not here concerned with the family law court's ability to fashion an equitable distribution of marital property, but with its interpretation of the antideficiency statutes. Once Charlotte became a secured creditor with the right to conduct a nonjudicial sale of her husband's real property in the case of default, she was subject to the limitations which accompany that right. As the court said in *Rettner* v. *Shepherd, supra,* 231 Cal.App.3d 943, a judgment creditor has two choices: "[H]e could attempt to enforce his judgment as an unsecured creditor under the provisions [governing judgments] or he could give up those rights in exchange for a promissory

---

[9]Because of the conclusion we reach, we need not discuss Code of Civil Procedure section 580a, which governs actions for deficiency judgment after a trustee's sale has taken place. Among its provisions is a requirement that "[a]ny such action . . . be brought within three months of the time of sale under the deed of trust or mortgage." We note that Charlotte did not attempt to collect any deficiency until almost three years after the foreclosures occurred.

note secured by valuable real property." (231 Cal.App.3d at p. 952.) There is no option available which allows the creditor "to get the benefits enjoyed by secured creditors while avoiding the proscriptions of the antideficiency rules." (*Ibid.*)

## DISPOSITION

The court's order of November 20, 1997, granting reconsideration of the order of September 23, 1997, is reversed. Each side is to bear its own costs.

Epstein, Acting P. J., and Hastings, J., concurred.