2003 ND 140

**Rachel M. KAUTZMAN, n/k/a Rachel M. Dietz, Plaintiff and Appellee,**

v.

**Robert A. KAUTZMAN, Defendant and Appellant.**

No. 20030038.

Supreme Court of North Dakota.

Aug. 22, 2003.

Rehearing Denied Sept. 25, 2003.

Steven A. Johnson, Vogel Law Firm, Fargo, N.D., for plaintiff and appellee.

Jonathan T. Garaas, Garaas Law Firm, Fargo, N.D., for defendant and appellant.

MARING, Justice.

[¶ 1] Robert A. Kautzman ("Kautzman") appealed a bench warrant and an order dated January 16, 2003, denying his motions to vacate the bench warrant and to determine that Rachel M. Kautzman, n/k/a Rachel M. Dietz ("Dietz") has no right to enforce her equitable liens three years after judgment. We affirm and remand for a determination on Dietz's request for attorney fees.

I

[¶ 2] This is the sixth appeal[1] arising out of a 1995 divorce action. *See Kautzman v. Kautzman*, 2002 ND 118, 647 N.W.2d 684 ("*Kautzman IV*"); *Kautzman*

---

1. As Justice Story once observed, "it is for the public interest and policy to make an end to litigation ... that suits may not be immortal, while men are mortal." *Ocean Ins. Co. v. Fields*, 18 Fed. Cas. 532, 539 (C.C.D.Ma.1841) (No. 10,406), quoted in *Lang v. State*, 2001 ND App 2, ¶ 2 n. 1, 622 N.W.2d 238. *See also Matrix Props. Corp. v. TAG Invs.*, 2002 ND 86, ¶ 38, 644 N.W.2d 601; *City of Wahpeton v. Drake–Henne, Inc.*, 228 N.W.2d 324, 331 (N.D.1975).

*v. Kautzman,* 2000 ND 190, 618 N.W.2d 500 (*"Kautzman III"*); *Kautzman v. Kautzman,* 2000 ND 116, 611 N.W.2d 883 (two appeals) (*"Kautzman II"*), and *Kautzman v. Kautzman,* 1998 ND 192, 585 N.W.2d 561 (*Kautzman I* ).

[¶ 3] The second amended judgment granted Dietz a divorce, divided the marital property, and ordered Kautzman to pay Dietz spousal support of $4,000, which included rehabilitative support of $2,000 per month from December 1, 1997, through December 2002 and $2,000 per month from December 1, 1997, until Dietz reaches age 65, dies, or remarries after December 31, 2002. *Kautzman I,* at ¶ 18. The judgment awarded Kautzman the parties' construction company ("KCI") and ordered him to pay Dietz $200,000 within 60 days and an additional $180,000 within four years after entry of judgment. *Id.* at ¶ 4. Kautzman appealed, challenging the property distribution and spousal support, and Dietz cross-appealed, challenging the trial court's valuation of KCI, its failure to require Kautzman to return $50,000 withdrawn from a savings account, and its failure to award attorney fees. We ruled against Kautzman on his appeal. We reversed in part, affirmed in part and remanded for, among other things, "a redetermination of the value of KCI and a redetermination of the property distribution in light of the revaluation of KCI." *Id.* at ¶ 38.

[¶ 4] After the decision in *Kautzman I,* the trial court increased the valuation of KCI by $280,859 and ordered Kautzman to pay Dietz an additional $140,429 as a property distribution. A third amended judgment issued on May 24, 1999, required Kautzman to pay Dietz $200,000, with interest, within 60 days and an additional $320,429, with interest, in seven annual installments, with an option to prepay at any time. The third amended judgment

gave Dietz liens on the parties' lake home and homestead and in Kautzman's interest in KCI. It required Dietz "to subordinate her liens on the lake home and homestead to the interests of a mortgagee who loans money to [Kautzman] to make payments to [Dietz], to the extent of the payments received by her to satisfy the obligations under paragraphs 8 and 9." The trial court also awarded Dietz attorney fees of $50,000 for the trial and $10,000 for the initial appeal, found Kautzman in contempt of court, ordered entry of money judgments against Kautzman, and denied Kautzman's request to eliminate or reduce his spousal support obligation. Kautzman filed two appeals:

In appeal No. 990328, Robert Kautzman appealed the district court's third amended judgment, dated May 24, 1999; a memorandum opinion dated August 26, 1999; a September 30, 1999, order finding Robert Kautzman in contempt of court, denying Robert Kautzman's motion to amend the third amended judgment or grant an evidentiary hearing, denying Robert Kautzman's motion for relief from the judgment, and directing the entry of money judgments; and money judgments entered on October 15 and 18, 1999, and January 3, 2000, in the amounts of: $1,500 for household goods and personal effects; $50,000 for money withdrawn from a bank account awarded to Rachel Kautzman; $322,139.18 for unpaid property distribution payments and interest; $41,893.88 for past-due spousal support; and $60,000 for attorney fees. In appeal No. 990386, Robert Kautzman appealed from the district court's November 3, 1999, order denying his motion to vacate paragraph 3 of the second amended judgment or to amend it to provide a reduced amount of spousal support or an earlier termination date, and from the district court's December

9, 1999, order denying Robert Kautzman's motion for reconsideration.

*Kautzman II*, at ¶ 4. Except for an issue about credit for spousal support payments, we summarily affirmed under N.D.R.App.P. 35.1. *Kautzman II*, at ¶ 10.

[¶ 5] In his fourth appeal, Kautzman "appealed from a memorandum opinion rejecting his claim of exemptions from execution, and from an order confirming a sheriff's sale." *Kautzman III*, at ¶ 1. "In November 1999, writs of execution were issued . . . on the $322,139.18 money judgment for past-due property distribution payments. . . . The sheriff levied on . . . Kautzman's home in West Fargo. Kautzman filed . . . a claim of exemptions, which were rejected by the trial court in January 2000." *Id.* at ¶ 4. "The West Fargo home was sold at a sheriff's sale on February 3, 2000, to Dietz, who submitted the highest bid, $130,000. The trial court confirmed the sheriff's sale and set a redemption period of 30 days from the date of service of the order." *Id.* at ¶ 6. Among other things, we rejected Kautzman's argument for application of N.D.C.C. ch. 32–19:

Kautzman argues Dietz's lien in the West Fargo home granted by the trial court to secure the property distribution payments should be viewed as a mortgage lien, thus mandating compliance with the mortgage foreclosure provisions of N.D.C.C. ch. 32–19. . . .

The specific lien granted by the trial court in the divorce judgment was in the nature of an equitable lien under N.D.C.C. § 14–05–25, and a "trial court may enforce an equitable lien by whatever means it deems appropriate to do justice between the parties." *Martian v. Martian*, 399 N.W.2d 849, 854 (N.D. 1987). *See also Moen v. Moen*, 519 N.W.2d 10, 12 (N.D.1994). Kautzman was not statutorily entitled to a one-year redemption period, and, under the cir-

cumstances, we conclude the trial court did not abuse its discretion in granting a 30–day redemption period.

*Kautzman III*, at ¶¶ 14, 15. We affirmed the trial court's order confirming the sheriff's sale. *Id.* at ¶ 22.

[¶ 6] *Kautzman IV*, Kautzman's fifth appeal in this divorce litigation, involved the trial court's March 7, 2001, "order finding Kautzman in contempt of court and ordering Kautzman 'taken into custody for a period of thirty days, or until [Kautzman] begins paying [Dietz] $4,000 a month in spousal support and an additional 10% of that amount to reduce the arrearage that has accrued' " and a June 1, 2001, judgment awarding "Dietz $48,359.18 for a property distribution payment due June 1, 2000, with interest." *Id.* at ¶ 3. We ruled Kautzman's contention " 'the doctrine of extinguishment controls' and his 'debt has been paid' . . . is without merit." *Id.* at ¶ 5. We said Kautzman's reliance on a number of decisions was "misplaced, because those decisions involved the foreclosure of a junior mortgage when there was an outstanding senior mortgage or the foreclosure of a mortgage subject to a senior tax lien—situations not at issue in this appeal." *Id.* We continued:

Kautzman's argument has not persuaded us that a party in a divorce action who gets a judgment for unpaid property distribution payments, forecloses a judgment lien, and purchases the judgment debtor's property at a sheriff's sale is precluded from seeking payment for any deficiency because the underlying debt was extinguished by the sheriff's sale.

*Id.* at ¶ 5. We also held "the trial court did not abuse its discretion in finding Kautzman in contempt of court." *Id.* at ¶ 12. The orders and judgments appealed from were affirmed. *Id.* at ¶ 14.

[¶ 7] The trial court, the Honorable Georgia Dawson, issued a bench warrant on December 3, 2002, directing that Kautzman be apprehended, brought before a referee or judge, and "be released after serving 30 days in jail or upon posting $10,000.00 cash bail while awaiting appearance before this Court, whichever occurs first," for Kautzman's failure to purge himself of the contempt found in the March 7, 2001, order affirmed in *Kautzman IV*. Kautzman moved to vacate the bench warrant, for an order confirming his application of a payment by a surety on a supersedeas bond, and "for an order determining that [Dietz] has no right to enforce her equitable liens three (3) years after judgment pursuant to N.D.C.C. § 32–19–06." The court denied Kautzman's motions in an order issued January 16, 2003.

[¶ 8] Kautzman appealed, stating a number of issues. For the sake of convenience, we will address Kautzman's arguments as he framed them in the table of contents of his appellate brief:

Point 1. The underlying process was unfair to Robert

A. Judge Dawson should not have been the deciding judge on any issue

B. Despite Robert's purgation of the contempt order, a bench warrant was improperly issued

C. Due Process Violations by the District Court—the basics

D. Due Process Violations by the District Court—the rules changed

E. Due Process Violations by the District Court—the law was disr[e]garded

Point 2. Rachel Has No Right to Enforce Her Equitable Liens Three Years after Judgment

II

A

[¶ 9] Kautzman contends Judge Dawson should not have decided any issue, asserting she "failed to certify familiarity with the record and/or a determination that the proceedings in the case may be completed without prejudice to the parties" and alleging she acted in violation of *Christl v. Swanson*, 2001 ND 98, ¶ 2 n. 1, 626 N.W.2d 690, N.D.C.C. § 27–05–27, and N.D.R.Civ.P. 63.

[¶ 10] Under N.D.R.Civ.P. 63, "[i]f a trial or hearing has been commenced and the judge is unable to proceed, any other judge may proceed with it upon certifying familiarity with the record and determining that the proceedings in the case may be completed without prejudice to the parties." Rule 63 applies to a trial or hearing that has been commenced and is not completed by the judge. Here, Judge Dawson issued a bench warrant to enforce a contempt finding which this Court had affirmed on appeal. Judge Dawson heard motions to vacate her bench warrant and to hold Dietz's liens unenforceable. Rule 63 is not applicable to the resolution of these motions. Nor is N.D.C.C. § 27–05–27 applicable, as it merely requires specified motions to "be presented and heard before the judge before whom the matter was heard ... unless for any reason the judge is unable to act." In addition, Kautzman has not drawn our attention to any facts in the existing record with which Judge Dawson needed to become familiar before presiding in the case. Judge Dawson was familiar with this Court's affirmance of the order finding Kautzman in contempt of court and with the judgments that Dietz was seeking to have enforced. Furthermore, Dietz asserted Kautzman never objected to Judge Dawson deciding the issues involved in

this appeal. For an effective appeal on any proper issue, the matter must have been raised in the trial court, so the trial court could rule on it, and a failure to object to an irregularity at trial is a waiver of the issue. *Piatz v. Austin Mut. Ins. Co.*, 2002 ND 115, ¶ 7, 646 N.W.2d 681. Thus, issues not raised in the trial court cannot be raised for the first time on appeal. *Questa Res., Inc. v. Stott*, 2003 ND 51, ¶ 6, 658 N.W.2d 756. "The purpose of this rule is to prevent a party from inviting error upon the trial court and then seeking to prevail upon appellate review of the invited error." *Klose v. Klose*, 524 N.W.2d 94, 96 (N.D.1994). Kautzman has not directed our attention to anything in the record indicating he objected to Judge Dawson participating or ruling on any issue involved in this appeal. We "are not ferrets, obligated to engage in unassisted searches of the record for evidence to support a litigant's position." *Fox v. Fox*, 2001 ND 88, ¶ 22, 626 N.W.2d 660. We, therefore, decline to further address this issue.

## B

[¶ 11] Kautzman contends he "purged himself of the contempt by his October, 2002, payment of $150,000 which was dedicated, in open court, to payment of unpaid spousal support." However, the $150,000 payment was made by the surety on a supersedeas bond before Kautzman "dedicated" it to payment of unpaid spousal support, and Dietz applied it to payment of judgments related to property distribution. Kautzman has not shown the payment purged him of contempt.

[¶ 12] Kautzman asserts Dietz "should not be allowed to gain legal advantage because of her refusal to honor her obligation to subordinate under the Third Amended Judgment ... with respect to the $150,000 paid on the supersedeas bond." The judgment requires Dietz "to subordinate her liens on the lake home and homestead to the interest of a mortgagee who loans money to [Kautzman] to make payments to [Dietz], to the extent of the payments received by her to satisfy the obligations under paragraphs 8 and 9." The judgment does not require Dietz to subordinate her liens to the interests of a surety on a supersedeas bond, and Kautzman has not shown Dietz failed to subordinate her interests to a mortgagee lending money to Kautzman so he could make payments to Dietz.

[¶ 13] We will address this payment at greater length later in this opinion.

## C

[¶ 14] Kautzman contends "[t]he defective civil contempt process that could lead to the issuance of the bench warrant constitutes a denial of due process," asserting:

> If Rachel is of the belief that any remaining delinquency in spousal support constitutes a contempt, she has the right to bring a motion to attempt [to] prove Robert is willfully disobeying his duties to her. Robert would be entitled to notice, and hearing, and the right to submit his defense to an impartial court—but only after Rachel first makes her case.

Kautzman ignores the fact that all of those acts have occurred and that he was found in contempt of court in an order this Court affirmed in *Kautzman IV*. The bench warrant issued by Judge Dawson in this case merely enforced the existing contempt order. Kautzman's perfunctory argument is without merit.

## D

[¶ 15] Kautzman complains that the $150,000 payment from the surety on his supersedeas bond should have been applied to his spousal support obligation,

thereby purging him of contempt, and he was deprived of his liberty without due process by issuance of the bench warrant. We have said "a party waives an issue by not providing supporting argument" and, "without supportive reasoning or citations to relevant authorities, an argument is without merit." *Olander Contracting Co. v. Gail Wachter Invs.*, 2002 ND 65, ¶ 27, 643 N.W.2d 29. We have also said "a party making a constitutional claim must provide persuasive authority and reasoning." *New Town Pub. School Dist. No. 1 v. State Bd. of Pub. School Educ.*, 2002 ND 127, ¶ 17, 650 N.W.2d 813. Kautzman has not provided persuasive reasoning or citations to relevant authorities, and his conclusory arguments are without merit.

## E

■ [¶ 16] Kautzman contends there were due process violations because the trial court disregarded N.D.C.C. § 9–12–07 in allowing Dietz to apply the $150,000 payment from the surety on Kautzman's supersedeas bond as she wished, rather than as Kautzman directed.

[¶ 17] Section 9–12–07, N.D.C.C., provides in part:

> When a debtor under several obligations to another does an act by way of performance, in whole or in part, which is applicable equally to two or more of such obligations, such performance must be applied as follows:
>
> 1. If, at the time of the performance, the intention or desire of the debtor that such performance should be applied to the extinction of any particular obligation is manifested to the creditor, it must be applied in such manner.
>
> 2. If no such application is then made, the creditor, within a reasonable time after such performance, may apply it toward the extinction of any obligation the performance of which was due to him from the debtor at the time of such performance.

In *State Bank of Streeter v. Nester*, 385 N.W.2d 95, 97 (N.D.1986), this Court said N.D.C.C. § 9–12–07 applies only if there is voluntary performance and that "court-ordered liquidation of the collateral" for a promissory note "does not constitute voluntary performance."

[¶ 18] Here, the performance was payment of $150,000 to Dietz by Alerus Financial as surety on a supersedeas bond posted by Kautzman to secure a stay of execution on the second amended judgment in connection with his 1998 appeal, which culminated in this Court's decision in *Kautzman I*. Although Kautzman repeatedly opposed requiring the surety to pay, on October 10, 2002, Judge Dawson ordered "that Alerus Financial, as surety on the supersedeas bond, is liable to [Dietz] in the amount of $150,000." Alerus paid the $150,000 with an October 15, 2002, check to Dietz.

[¶ 19] If N.D.C.C. § 9–12–07 was inapplicable because the payment was not voluntary, the trial court had to make an equitable allocation. *Streeter*, 385 N.W.2d at 97. The trial court ratified Dietz's allocation when it issued the bench warrant, and the trial court's decision "after weighing the equities of a case will not be reversed unless an abuse of discretion is affirmatively established." *Id.* Kautzman has not affirmatively established an abuse of discretion.

■ [¶ 20] If N.D.C.C. § 9–12–07 is applicable, Kautzman's tardy attempt to allocate the payment to his spousal support obligation was insufficient under N.D.C.C. § 9–12–07(1), which only requires a creditor to allocate a debtor's performance "to the extinction of any particular obligation" if the debtor's intention

"is manifested to the creditor" "at the time of the performance." On October 10, 2002, Judge Dawson ordered "that Alerus Financial, as surety on the supersedeas bond, is liable to [Dietz] in the amount of $150,000." Alerus paid the $150,000 with an October 15, 2002, check to Dietz. Kautzman first requested the $150,000 payment be allocated to his spousal support obligation in open court on November 20, 2002. Kautzman's attorney acknowledged at oral argument that he received a copy of the order saying Alerus had to pay Dietz $150,000 and that he knew the $150,000 was going to be paid but did nothing about allocating that payment until November 20, 2002, asserting: "We didn't think we had to."[2] Thus, Kautzman did not manifest his intention about allocation of the $150,000 payment until about one month after the performance occurred. When a debtor does not manifest an intention about the application of the performance at the time of the performance, then, under N.D.C.C. § 9–12–07(2), "the creditor ... may apply it toward the extinction of any obligation the performance of which was due to him from the debtor at the time of such performance."

[¶ 21] We conclude N.D.C.C. § 9–12–07 did not preclude Dietz from allocating the $150,000 to whatever obligations Kautzman owed her when the payment was made.

## III

[¶ 22] Relying on N.D.C.C. § 32–19–06, Kautzman contends Dietz has no right to enforce her equitable liens more than three years after judgment.

[¶ 23] In *Kautzman II*, we noted judgments had been entered in Dietz's favor in October 1999 and January 2000 for "$1,500 for household goods and personal effects; $50,000 for money withdrawn from a bank account awarded to Rachel Kautzman; $322,139.18 for unpaid property distribution payments and interest; $41,893.88 for past-due spousal support; and $60,000 for attorney fees." *Id.* at ¶ 4. In ruling the doctrine of extinguishment did not prevent entry of a money judgment after foreclosure of an equitable lien, this Court said:

> Kautzman's argument has not persuaded us that a party in a divorce action who gets a judgment for unpaid property distribution payments, forecloses a judgment lien, and purchases the judgment debtor's property at a sheriff's sale is precluded from seeking payment for any deficiency because the underlying debt was extinguished by the sheriff's sale.

*Kautzman IV*, at ¶ 5. After citing that passage, Kautzman argued in his brief:

> Robert believes that the Supreme Court chose its words wisely, and that this Supreme Court means what it says. Robert understands that the Supreme Court has ruled that procedures found with N.D.C.C. Chap. 32–19 need not be followed when the divorce court enforces the equitable lien. He does not take issue with that final decision.
>
> However, no court can disregard the law and those protections afforded to Robert under the anti-deficiency stat-

2. This indicates the subject of allocating the payment was considered, but Kautzman chose not to request allocation of the payment to spousal support until after the payment had been made by Alerus. Ordinarily, "parties will not be relieved from free, calculated, deliberate choices they have made," and it is not this Court's "function to allow second-guesses on trial strategy." *State v. Motsko*, 261 N.W.2d 860, 864 (N.D.1977). We need not attempt to determine if Kautzman's failure to seek allocation before November 20, 2002, constituted "a deliberate trial tactic designed to 'sandbag' the judicial process," *State v. Trieb*, 315 N.W.2d 649, 655 n. 8 (N.D.1982).

utes, specifically N.D.C.C. § 32–19–06, that created a three year window for Rachel to execute against her *deficiency judgments*. N.D.C.C. § 32–19–06, in pertinent part, provides:

".. Any deficiency judgment obtained must be enforced by execution as provided by law, except that no execution may be enforced after three years from the date of the rendition of the deficiency judgment ..."

Such statute is not a procedural matter, but rather, a *substantive right* given to Robert by the Legislative Assembly of North Dakota. The three year window is an absolute limitation which the courts cannot expand.

[¶ 24] This Court's use of the word, "deficiency," in the cited passage obviously was not meant to cast Dietz's judgment, which was not completely satisfied because there was an unpaid balance remaining, as a "deficiency judgment" subject to the three-year limitation imposed by N.D.C.C. § 32–19–06.

[¶ 25] Section 32–19–06, N.D.C.C., provides, in part:

In any action for the foreclosure of a real estate mortgage or the cancellation or the foreclosure of a land contract, the court may render judgment for the amount found to be due at the time of the rendition of the judgment.... Where a note or other obligation and a mortgage upon real property have been given to secure a debt contracted after July 1, 1951, and the sale of the mortgaged premises has failed to satisfy in full the sum adjudged to be due and the costs of the action, the plaintiff may, in a separate action, ask for a deficiency judgment.... Any deficiency judgment obtained must be enforced by execution as provided by law, except that no execution may be enforced after three years

from the date of the rendition of the deficiency judgment.

On its face, N.D.C.C. § 32–19–06 applies only to foreclosure of mortgages and land contracts. It does not specify liens granted in a divorce judgment under N.D.C.C. ch. 14–05. This Court rejected Kautzman's attempt to subject liens granted under N.D.C.C. ch. 14–05 to the foreclosure procedures of N.D.C.C. ch. 32–19 in *Kautzman III*, at ¶¶ 14, 15. This Court had earlier summarily rejected, under N.D.R.App.P. 35.1, Kautzman's argument that N.D.C.C. ch. 32–19 should control foreclosure of judicial liens, in *Kautzman II*, at ¶ 10. Kautzman's perverse arguments have not persuaded us that a party in a divorce action who gets a money judgment for money or other property owed that party under a divorce judgment and forecloses a judgment lien, but whose judgment is not fully satisfied by the sale of the debtor's property at the sheriff's sale, is limited by N.D.C.C. § 32–19–06 to three years within which to enforce the equitable liens after judgment.

[¶ 26] Kautzman asserts "that for substantive purposes the equitable lien given to Rachel is a mortgage, or a judicially supervised sale and purchase of real property with a retained lien for the purchase price, both concepts falling within the substantive protections afforded Robert under the anti-deficiency statutes." Clearly, the lien granted Dietz in the divorce judgment was not a sale and purchase of real property. We rejected Kautzman's argument that the lien given to Dietz is a mortgage in *Kautzman III*, at ¶¶ 15, 16, and Kautzman has again not shown it to be a mortgage, which N.D.C.C. § 35–03–01.1 says is a contract.

[¶ 27] Kautzman's reliance on decisions, such as *Oropallo v. Oropallo*, 68 Cal.App.4th 997, 80 Cal.Rptr.2d 669 (1998); *Red River State Bank v. Reierson*, 533

N.W.2d 683 (N.D.1995); *Borsheim v. Owan,* 467 N.W.2d 95 (N.D.1991); and *Langenes v. Bullinger,* 328 N.W.2d 241 (N.D.1982), involving radically different fact situations than those presented in this case is misplaced.

[¶ 28] We conclude Kautzman has not shown N.D.C.C. § 32–19–06 applies to any judgment involved in this case.

### IV

[¶ 29] Dietz has requested "attorneys fees incurred in this appeal pursuant to N.D.C.C. § 14–05–23," contending Kautzman "has asserted positions on appeal that lack merit and are frivolous." "We have often expressed a preference to have this issue addressed initially by the trial court." *Kautzman I,* at ¶ 37. As we did in that decision, "[w]e direct the trial court on remand to consider awarding attorney fees to [Dietz] for this appeal." *Id.*

### V

[¶ 30] The bench warrant and the order appealed from are affirmed and the matter is remanded for a determination of Dietz's attorney fees on appeal.

[¶ 31] GERALD W. VANDE WALLE, C.J., ALLAN L. SCHMALENBERGER, D.J., WILLIAM A. NEUMANN, and DALE V. SANDSTROM, JJ., concur.

[¶ 32] The Honorable ALLAN L. SCHMALENBERGER, D.J., sitting in place of KAPSNER, J., disqualified.